**Jon M. Egan**, OSB 002467
Jegan@eganlegalteam.com
Jon M. Egan, PC
547 Fifth Street
Lake Oswego, OR 97034-3009
Tel: (503) 697-3427
Fax: (866) 311-5629
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **CAROL FERGUSON** and **LYNDA FREEMAN**, on behalf of themselves and, in addition, on behalf of others similarly situated,<br><br>                              Plaintiffs,<br>    vs.<br>**MARIA SMITH**, an individual; **ALL STAR AUTO GROUP, INC.**, a Delaware corporation; the **SMITH AUTO GROUP**, an unregistered conglomeration of entities owned by Maria Smith; **GLADSTONE AUTO, LLC**, an Oregon limited liability company; and **CARROS, INC.**, an Oregon corporation;<br>                              Defendants. | Case No. 3:18-cv-00372-SB<br><br>Plaintiffs' and Collective Members' Motion for leave to file Reply *nunc pro tunc*, or in the alternative, to extend deadline to file attached reply |

**TABLE OF CONTENTS**

I.  A Reply is allowed ................................................................................................................ 2
II. A Reply could not be timely filed......................................................................................... 2
III. Plaintiffs seek leave to file the attached Reply *nunc pro tunc* ...................................... 2

The Court noted at our last oral argument that plaintiffs could file this motion without conferral.

## I. A Reply is allowed

Replies in support of attorney-fee motions are allowed. LR 54-3(b). They are typically due 14 days after service of the non-prevailing party's objections. *Id.*

## II. A Reply could not be timely filed

Defendants filed their objections to plaintiffs' fee motion on 9/19/23. Dkt. 286. Pursuant to this Court's Order [Dkt. 273], plaintiffs' Reply was due on 9/26/23.

Upon reviewing defendants' objections, plaintiffs subpoenaed defense counsel's attorney-fee records in order to respond to allegations that plaintiffs' counsel had "grossly inflated [the] fees and costs motion," and that the motion was "patently unreasonable," Dkt. 286 at 2, as well as to rebut objections to the reasonableness of staffing decisions and the non-clerical nature of tasks that defendants billed their own clients attorney rates for. Defendants moved to quash that subpoena on 9/26/23. Dkt. 292. This Court issued its Order on that motion to quash on 10/2/23. Dkt. 301.

If the Court had denied the motion to quash, plaintiffs would have incorporated the attorney-fee records into their Reply. They therefore could not file the Reply until the Court issued its order on the motion to quash. That occurred after the Court's deadline. [1]

## III. Plaintiffs seek leave to file the attached Reply *nunc pro tunc*

Defendants have expressed confusion regarding the request that the motion be granted *nunc pro tunc*. That request simply addresses the fact that the motion for leave to file a Reply is being filed after the original deadline for that Reply. Some aspects of

---

[1] As the Court is aware, plaintiffs' counsel Jon M. Egan was also unavailable for a period of time on and after 10/13/23 due to a medical issue.

**Plaintiffs' and collective's motion for leave to file *nunc pro tunc* Reply** Page 2

local rules and practices require that motions for extensions of time be filed before the expiration of the deadline at issue. *See, e.g.*, Court's website entries for Judges Hernández and Russo (motions for extensions of time "should be filed no less than seven days before the existing deadline"). This Court does not specifically list that limitation on the website, but many courts view such "belated" requests as requiring a "*nunc pro tunc*" designation, so that the document can be deemed to have been timely filed. *See, e.g.*, *Melendez v. Diaz*, No. 1:20-CV-01393-ADA-CDB-PC, 2023 WL 3063291, at *1 n.1 (E.D. Cal. Apr. 24, 2023), *report and recommendation adopted sub nom. Melendez v. Ndoh*, No. 1:20-CV-01393-ADA-CDB-PC, 2023 WL 5723825 (E.D. Cal. Sept. 5, 2023) ("Plaintiffs' opposition was due February 14, 2023. On March 8, 2023, counsel for Plaintiffs filed a motion *nunc pro tunc* requesting a three-week extension of time to file an opposition… The Court granted both sides' requests and accepted Plaintiffs' late-filed opposition."); *Seifi v. Mercedes-Benz USA, LLC*, No. C12-5493 TEH, 2013 WL 5568449, at *6 (N.D. Cal. Oct. 9, 2013) ("In the interests of judicial economy, the Court therefore construes Plaintiffs' opposition as a belated request for leave to amend, which is granted *nunc pro tunc*.").

That is all that plaintiffs are asking for here—that they be allowed to file the attached Reply, and that it be deemed timely so that the Court can consider it.

Respectfully submitted this 2nd day of November, 2023

                                            JON M. EGAN, P.C.

                                            *s/ Jon M. Egan*
                                            _____
                                            JON M. EGAN, OSB # 002467
                                            Attorney for Plaintiffs

**Plaintiffs' and collective's motion for leave to file *nunc pro tunc* Reply** Page 3

**Jon M. Egan**, OSB 002467
Jegan@eganlegalteam.com
Jon M. Egan, PC
547 Fifth Street
Lake Oswego, OR 97034-3009
Tel: (503) 697-3427
Fax: (866) 311-5629
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **CAROL FERGUSON** and **LYNDA FREEMAN**, on behalf of themselves and, in addition, on behalf of others similarly situated,<br><br>                              Plaintiffs,<br>           vs.<br>**MARIA SMITH**, an individual; **ALL STAR AUTO GROUP, INC.**, a Delaware corporation; the **SMITH AUTO GROUP**, an unregistered conglomeration of entities owned by Maria Smith; **GLADSTONE AUTO, LLC**, an Oregon limited liability company; and **CARROS, INC.**, an Oregon corporation;<br>                              Defendants. | Case No. 3:18-cv-00372-SB<br><br>Plaintiffs' and Collective Members' Reply in support of their Motion for Attorney Fees and Nontaxable Expenses |

**TABLE OF CONTENTS**

I.  Lodestar/reasonable fee calculation ........................................................................... 1
     A.  Hourly Rates ........................................................................................................ 1
     B.  Block-billed and vague entries ............................................................................ 2
     C.  Second-chair trial work ....................................................................................... 3
     D.  Clerical/administrative work ............................................................................... 4
     E.  Hours expended ................................................................................................... 5
     F.  Multiplier factors ................................................................................................. 6
II.  Nontaxable expenses ..................................................................................................... 8
III. Conclusion ................................................................................................................... 10

This Reply will address only the points raised by defendants in their objections [Dkt. 286]. We submit the Declaration of Jim W. Vogele herewith to address defendants' incorrect factual allegations.

## I. Lodestar/reasonable fee calculation

### A. Hourly Rates

Reasonable hourly rates are rates "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1206 (9th Cir. 2013). The relevant community is the Court's forum—Downtown Portland in the State of Oregon. *See id.* at 1205. And although this litigation began in 2018, the Court uses currently prevailing rates in its analysis. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("Full compensation requires charging current rates for all work done during the litigation, or by using historical rates enhanced by an interest factor.").

Defendants object to using Portland rates for plaintiffs' counsel Jon M. Egan, because his office is located in Lake Oswego. Lake Oswego abuts Portland, and it straddles the Clackamas/Multnomah County line. Courts in this District have always awarded Mr. Egan fees based on the Portland locality, because "His office is in Clackamas County, although he handles cases primarily in Portland." *Kerpan v. Biscuits Cafe, Inc.*, No. 08-CV-811-ST, 2009 WL 1813147, at *3 (D. Or. June 23, 2009). That is confirmed by the list of Mr. Egan's class and collective actions in paragraph 9 of Dkt. 281, of which nearly all were filed in the Portland Division of this District or Multnomah County Circuit Court. *Accord*, *I.Q. Credit Union v. Khaleesi*, No. 3:22-CV-01226-YY, 2023 WL 5917715, at *4 (D. Or. Aug. 14, 2023), *report and recommendation adopted,*

No. 3:22-CV-01226-YY, 2023 WL 5887272 (D. Or. Sept. 11, 2023) ("The relevant community is one in which the district court sits.") (internal quotations omitted).

Defendants try to compare this case with a one-person overtime case, *Huyck v. Shilling,* Case No. 3:18-cv-00400-JR, 2022 WL 16924130 (D. Or. Nov. 14, 2022). The two cases did not involve the same issues, length, complexity, or risk. The lodestar takes account of the specific skills and work necessary in the particular case in which it is decided. Further, there is not a "class action" or "complex litigation" category of the Oregon State Bar Economic Survey; "employment law" does not adequately capture the scope of the kinds of cases that Mr. Egan handles. Plaintiffs' counsel submits that an individual run-of-the-mill wrongful termination suit is qualitatively different in both scope and difficulty than a collective action spanning years of violations, years of litigation, and over 60 plaintiffs. The "employment law" numbers available in the 2022 Economic Survey are not even statistically significant enough to allow calculations of the relative percentiles involved, and wage-and-hour is a small subsection of even that statistically insufficient data set.

Defendants also scoff at Mr. Egan's expertise and specialization in wage-and-hour class and collective actions. But courts in this District have specifically and explicitly recognized that expertise. Mere years in general practice do not account for such expertise. *See also* the Declaration of Jim W. Vogele filed herewith, addressing defendants' allegations regarding the relative hourly rates between the plaintiffs' counsel.

**B. Block-billed and vague entries**

Block billing is when more than one task is included in one time entry, so that the Court is unable to determine how much time was devoted to each. Plaintiffs' counsel bills time singly by task—preparation of one motion is one time entry. The Court read each of the motions filed by the parties and can determine whether the amount spent

was a reasonable amount to prepare each submitted filing.

Further, plaintiffs' counsel does not bill substantial minimums for relatively routine tasks such as emails or telephone calls. Such minimal expenditures are billed only at 0.05 hours (for emails) and 0.075 hours (for short telephone calls with clients). That equates to 3 minutes per email and 4.5 minutes per telephone call. Anything in excess of those, plaintiffs' counsel makes a more detailed time entry. But it would take longer to make a detailed time entry, for opposing counsel to read it, and for the court to read it, than such tasks took in the first place. When there is another task being done on the same day, such as preparation for a motion, we do not bill for the time at all. But when such short, routine tasks are the only thing being done on a case in a day, from both a matter of efficiency and judicial economy, a simple notation of the result and 3 minutes should suffice. All had to do with this case.

## C. Second-chair trial work

Defendants object to time spent by Mr. Vogele, arguing that this simple case did not require more than one attorney at trial. Their own trial staffing of three attorneys (plus California attorney Robert Bekken in the gallery, who was counsel of record until the trial) belies that argument. *See, e.g.*, *Moon v. Gab Kwon*, No. 99 CIV. 11810 (GEL), 2002 WL 31512816, at *5 (S.D.N.Y. Nov. 8, 2002) ("Defendants dispute 20.3 hours of the total, including the 18.5 hours Ms. Cooper recorded for second-seating the trial. Defendants neglect to mention, however, that they were represented by a three-person trial team, and presumably were properly charged for the time of all three. Since it is common practice for law firms with paying clients to send more than one lawyer to trials and other court proceedings, there is no reason why Moon should not recover fees for Ms. Cooper's time spent at trial.") (internal citations omitted).

### D. Clerical/administrative work

The work that Ms. Lauzier does in reviewing and cite checking documents is not "clerical." Mr. Egan does his own nonbillable clerical work, such as typing, filing, copying, printing, scanning, scheduling, downloading and saving documents, filing documents, and communicating with court staff on non-substantive issues. *Compare, e.g.*, *Strugari v. Sagamore Ins. Co.*, No. 3:20-CV-00956-SB, 2023 WL 3002442, at *11 (D. Or. Apr. 19, 2023); *Bergen v. Tualatin Hills Swim Club, Inc.*, No. 3:16-CV-00052-HZ, 2016 WL 2736105, at *3 (D. Or. May 11, 2016) ("In Strand, the court noted that examples of clerical tasks include handling filing confirmation, receiving emailed court notices, and keeping track of docketing deadlines. The Court finds that, unlike tasks such as these, preparing a certificate of compliance is not clerical in nature. Preparing such a certificate involves reading and potentially interpreting the Local Rules of Civil Procedure. It is legal work, albeit exceedingly simple legal work. While the local rules governing word-count are simple to understand and apply, reading them and certifying compliance does not qualify as a clerical task.") (underlining in original, internal citations omitted). Ms. Lauzier's billed work is that of a paralegal—evaluating the consistency and persuasiveness of arguments, making sure that the cited cases and statutes say what is indicated in the briefing, checking for spelling and grammar errors, proofreading case captions and footers, curating appropriate exhibits to suggest to counsel, etc. Some firms might even employ an associate attorney to do such work.

Similarly, Ms. Lauzier's attendance at hearings is active—she takes notes, she provides documents to plaintiffs' counsel when needed, and she passes notes to him when appropriate. *See, e.g.*, *Hernandez v. Polanco Enterprises, Inc*, No. 11-CV-02247-YGR, 2016 WL 1461946, at *6 (N.D. Cal. Apr. 14, 2016) (awarding fees for paralegal's attendance at pretrial conference for those reasons). These are similar to the tasks

performed by a second-chair attorney (*e.g.* those who attended every hearing for defense counsel), so plaintiffs' counsel actually bills less for such proceedings than a defense firm who sends two attorneys. *See, e.g.*, *Brandon E. v. Dep't of Educ., State of Hawaii*, No. CV07-00536-ACK-LEK, 2008 WL 4602533, at *10 (D. Haw. Oct. 16, 2008) (awarding fees for paralegal's attendance at various meetings and proceedings in lieu of second-chair associate attorney).

### E. Hours expended

Defendants concede that the state claims in this case were "based on the same core facts as the federal." Dkt. 286 at 3. They nevertheless argue that plaintiffs' reasonable hours expended should be reduced for several reasons.

Hours spent on related motions, even unsuccessful ones, are recoverable. *Cabrales v. Cnty. Of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991) ("If a plaintiff ultimately wins on a particular claim, she is entitled to all attorney's fees reasonably expended in pursuing that claim—even though she may have suffered some adverse rulings). This specifically includes motions for class certification. *O'Neal v. City of Seattle*, 66 F.3d 1064, 1068–69 (9th Cir. 1995) (affirming the district court's decision to award attorneys fees for an unsuccessful class certification motion where the class certification motion was not unrelated to the plaintiff's claims).

Defendants further argue, without citation or specifics, that plaintiffs "should not be permitted to recover fees and costs for work done prior to [August 2018]" because aspects of the initial Complaint were dismissed with leave to replead, which was then done. Dkt. 286 at p. 4 n.6. There is no authority for this. The hours required to prosecute the case are what is relevant, and that includes dealing with opposing counsel's motions and repleading when required in order to ultimately prevail.

**Plaintiffs' and collective's Reply re motion for fees/expenses**                    Page 5

### F. Multiplier factors

Defendants argue that the amount of fees being sought is disproportionate to the amount awarded by the jury. That is not a valid objection in an FLSA case, which by definition involves small amounts of money (the *minimum* wage, e.g.). The Supreme Court has clearly rejected "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon," reasoning that "[s]uch a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors." *Hensley v. Eckerhart*, 461 U.S. 424, 435 n.11 (1983). *See also City of Riverside v. Rivera,* 477 U.S. 561, 574, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) ("reject[ing] the proposition that fee awards ... should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers"). "The same logic applies to claims pursued under the FLSA." *Rutti v. Lojack Corp.*, No. SACV 06-350 DOC JCX, 2012 WL 3151077, at *7 (C.D. Cal. July 31, 2012), citing *James v. Wash Depot Holdings, Inc.,* 489 F.Supp.2d 1341, 1347 (S.D. Fla. 2007) ("Given the nature of the claims under the FLSA and the remedial purpose of the Act, it is not uncommon that the attorneys' fees will exceed the amount recovered by the plaintiff."); *Heder v. City of Two Rivers,* 93 Fed. Appx. 81, 83 (2004) (applying *Rivera* to FLSA case and upholding award of attorneys' fees where plaintiff "obtained a precedent that doubtless will be valuable to other firefighters"); *Saizan v. Delta Concrete Products Co., Inc.,* 448 F.3d 795, 799 (5th Cir. 2006) ("In a lawsuit initiated under the FLSA, an attorney's failure to obtain every dollar sought on behalf of his client does not automatically mean that the modified lodestar amount should be reduced.") (internal citations omitted).

"[T]he correct standard is one of compensation for time reasonably expended." *Thorne v. City of El Secundo*, 802 F.2d 1131, 1143 (9th Cir.1986). "It must be remembered that an award of attorneys' fees is not a gift. It is just compensation for

expenses actually incurred in vindicating a public right." *Rutti*, 2012 WL 3151077, at *7; *see also id.* at *2 ("Courts must award appropriate compensation to ensure that competent counsel will take on cases that seek to protect an important public right but may not be financially lucrative."), citing *City of Burlington v. Dague*, 505 U.S. 557 (1992). *See also*, *McKinnon v. City of Merced*, No. 1:18-CV-01124-NONE-SAB, 2020 WL 4813206, at *15 (E.D. Cal. Aug. 19, 2020), *report and recommendation adopted,* No. 1:18-CV-01124-NONE-SAB, 2020 WL 5658363 (E.D. Cal. Sept. 23, 2020) ("In FLSA cases, like other discrimination or civil rights cases, the attorneys' fees need not be proportional to the damages plaintiffs recover, because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights.") (citations omitted).

Next, defendants argue that plaintiffs "recovered damages for only 5 percent of the employees they represented." Dkt. 286 at 7. It is unknown how they arrived at this figure, but it is wrong. 108 employees opted in and presented claims at trial. Of those, 62 recovered damages. That is 57.4%.

It must also be noted that plaintiffs and defendants face different obstacles in litigation. *Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir. 2008) ("It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical… where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker."); *Chabner v. United of Omaha Life Ins. Co.*, C-95-0447 MHP, 1999 WL 33227443, *3 (N.D. Cal. Oct. 12, 1999) ("Defendant ignores the crucial differences between

prosecuting and defending a case. These include the burden of proof, the relative difficulty of obtaining access to essential information, and the chance that a given case may have greater precedential value for one side than the other. Finally, defendant lost this case, so defendant's approach does not recommend a model for conducting litigation.") (internal citations omitted).

Next, defendants try to lay the blame for the case not settling at the feet of plaintiffs. That is wrong. Defendants refused to clarify before the settlement conference whether they were settling the federal case, or both the state case and the federal case. Then, at the settlement conference, defendants' last, best, and final offer was less than half of what the jury eventually awarded to plaintiffs in the federal case—and that offer was *inclusive* of attorney fees and costs. Dkt. 286 at 7. It takes two to settle, and defendants never offered anywhere near the value of the case. Further, we again note that defendants, and only defendants, possess the *deus ex machina* in civil litigation—the offer of judgment. If defendants had made an offer of judgment for the eventual jury verdict plus fees, we would not have needed to go through the trial. They chose not to do that, for reasons that they refuse to divulge. They cannot now be heard to object that the case did not settle.

If Defendants had offered the eventual verdict amount at the outset of this case, the Court and the parties would have avoided all of this time, effort, and cost. But plaintiffs in such a situation do not have a choice—if they want the money that the statute guarantees them, they have to keep matching defendants, procedural blow for procedural blow, for as long as it takes to win. Encouraging plaintiffs not to accept less than the full value of their claims is the whole point of the FLSA's fee-shifting provisions.

## II. Nontaxable expenses

Defendants make vague objections that plaintiffs have failed to make a granular

**Plaintiffs' and collective's Reply re motion for fees/expenses**　　　　　Page 8

showing of why each transcript and photocopy was necessary in the case. That is not required. Plaintiffs' counsel has ordered all of the same transcripts that defense counsel has ordered; they were used in summary judgment and played at trial. The only filing fee was to file the Complaint in this case. Receipts have been provided for all of the out-of-pocket expenditures. Plaintiffs' counsel swore in his declaration that all of the mileage to and from court, photocopies, delivery fees, and legal research charges were reasonably and necessarily incurred in the prosecution of the plaintiffs' claims.

Regarding the scanning fees and Jennifer Murphy's fees, those were required almost entirely because of defendants' recordkeeping practices. Incredibly for a modern company, defendants kept no electronic payroll records. We therefore had to have a scanning company come out to defendants' premises and scan rooms full of banker's boxes in order to acquire the data from the employees' pay stubs (which was in turn required to determine what dates paychecks were issued, and which employees suffered which damages). Defendants split the cost of that scanning with plaintiffs 50/50, so they obviously viewed it as a reasonable litigation expense.

Ms. Murphy was employed to strip and collate that data and calculate the minimum-wage and overtime liquidated damages associated with the hours listed on those 37,000 pay stubs—just like the damages summary witness that defendants hired and put on at trial. The fees associated with Ms. Murphy's services were therefore reasonable out-of-pocket expenses. *See, e.g.*, *Van Dyke v. BTS Container Serv., Inc.*, No. 08-cv-561-KI, 2009 WL 2997105, at *2 (D. Or. Sept. 15, 2009) ("Under the Fair Labor Standards Act, costs ['of the action'] include reasonable out-of-pocket expenses."), (citing *Smith v. Diffee Ford–Lincoln–Mercury, Inc.,* 298 F.3d 955, 969 (10th Cir. 2002)). "Costs of the action" "can include costs beyond those normally allowed under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920." *McNamara v. Infusion Software, Inc.*, No. CV-17-04026-PHX-

SPL, 2020 WL 4921984, at *8 (D. Ariz. Aug. 21, 2020), citing *Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1988) (FLSA's costs provision authorizes an award of costs as part of a "reasonable attorney's fee," which would not be authorized under Rule 54 or 28 U.S.C. § 1920); *O'Neal v. Am.'s Best Tire LLC*, No. CV-16-00056-PHX-DGC, 2017 WL 1311670, at *8 (D. Ariz. Apr. 5, 2017) (same).

### III. Conclusion

For the reasons described above and in previous briefing, plaintiffs and the collective members should be awarded their fees, costs, and expenses as requested.

DATED this 2nd day of November, 2023

                                                          JON M. EGAN, P.C.

                                                          *s/ Jon M. Egan*

                                                          JON M. EGAN, OSB # 002467
                                                          Attorney for Plaintiffs