IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CAROL FERGUSON and LYNDA
FREEMAN, on behalf of themselves and, in
addition, on behalf of others similarly situated,

                Plaintiffs,

     v.

MARIA SMITH, an individual; GLADSTONE
AUTO, LLC, an Oregon limited liability
company; and CARROS, INC., an Oregon
corporation,

                Defendants.

Case No. 3:18-cv-00372-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Following jury and bench trials in this Fair Labor Standards Act ("FLSA") collective

action, Plaintiffs Carol Ferguson and Lynda Freeman (together, "Plaintiffs") moved for an award

of attorney's fees, costs, and nontaxable expenses under Federal Rule of Civil Procedure

("Rule") 54(d), the FLSA's fee-shifting provision (29 U.S.C. § 216(b)), and 28 U.S.C. § 1920.

Defendants Maria Smith, Gladstone Auto, LLC, and Carros, Inc. (together, "Defendants") argue

that the Court should deny or reduce Plaintiffs' request.

///

PAGE 1 – OPINION AND ORDER

The Court has jurisdiction under 28 U.S.C. § 1331, and all parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). For the reasons explained below, the Court grants in part and denies in part Plaintiffs' motion for fees, costs, and nontaxable expenses.[1]

## PRELIMINARY PROCEDURAL MATTER

Before addressing the parties' arguments regarding Plaintiffs' requested fees, costs, and nontaxable expenses, the Court must resolve a preliminary procedural matter: Plaintiffs' motion for leave to file their reply nunc pro tunc.[2] (Pls.' Mot. Leave File Reply Nunc Pro Tunc ("Pls.' Mot. Leave") at 1-3, ECF No. 308.) As explained below, the Court grants Plaintiffs' motion for leave.

## I.    RELEVANT PROCEDURAL HISTORY

Less than two weeks after the Court entered judgment in Plaintiffs' favor and against Defendants on Plaintiffs' claims for violations of the FLSA's minimum wage and overtime requirements (ECF No. 271), Defendants filed an unopposed motion for an extension of time in which to file "any motions to recover attorney's fees and any [b]ills of [c]osts." (ECF No. 272 at 2.) Defendants explained that Plaintiffs did not oppose their request for extension of time and that the extension was necessary because the parties "need[ed] additional time to prepare any attorney's fees motion or [b]ills of [c]osts given that this action involved numerous claims litigated over many years, and across multiple law firms on Defendants' behalf," and "[e]ach

---

[1] Given the parties' and Court's familiarity with the factual and procedural history of this case, the Court describes it below only as necessary to address the issues the parties raise in their motion papers.

[2] "Nunc pro tunc mean[s] 'now for then,' [and] refers to the power . . . to treat something done now . . . as effective as of an earlier date." *Reyes-Batista v. Garland*, 50 F.4th 288, 292 (1st Cir. 2022) (simplified).

side ha[d] years of billing records that they must analyze to determine what fees they can seek to recover." (*Id.* at 1-2.)

The Court granted Defendants' unopposed motion for an extension of time. (ECF No. 273.) In accordance with the proposal in Defendants' motion, the Court set a September 5, 2023 deadline for the parties to file any motions for attorney's fees or cost bill, and September 19 and September 26, 2023 deadlines for the parties to file their respective responses and replies.[3] (ECF No. 273.)

On September 5, 2023, after the parties filed notices of appeal and Defendants moved to stay enforcement of the Court's judgment and deposit funds in the Court's registry (ECF Nos. 274-77), Plaintiffs timely filed their pending motion for attorney's fees, costs, and nontaxable expenses. (ECF No. 279-80.) Two weeks later, Defendants timely filed their objections. (ECF No. 286.)

On September 25, 2023, Plaintiffs moved for leave to file a surresponse to Defendants' motion to stay and deposit funds and attempted to serve a subpoena duces tecum on Defendants' attorneys' law firm, Lane Powell, P.C. ("Lane Powell"), seeking records regarding the attorney's fees and costs Defendants incurred in this litigation. (ECF Nos. 290, 292-93.) The next day, September 26, 2023, the Court entered an Order directing Defendants to file supplemental briefing in support of their motion to stay and deposit funds in the Court's registry (ECF No.

---

[3] Typically, parties must file their (1) motion for attorney's fees and bills of cost "[n]o later than 14 days after the entry of judgment," (2) objections/responses "not later than 14 days after service" of the motion for attorney's fees and bill of costs, and (3) replies "not later than 14 days after service of the objections." *See* FED. R. CIV. P. 54(d)(2)(B)(i); LR 54-1(a)-(b); LR 54-3(a)-(b). Given Defendants' explanation as to the necessity of the post-judgment extension of time (i.e., fees and costs are based on an action involving numerous claims litigated over many years), it is not clear why Defendants proposed, and Plaintiffs agreed to, an expedited seven-day reply deadline.

291), and Plaintiffs failed timely to file a reply in support of their motion for fees, costs, and nontaxable expenses.

Although Plaintiffs did not file a reply on September 26, 2023, they did file a response to the motion to quash subpoena duces tecum and request for an expedited hearing that Defendants and Lane Powell filed earlier that evening, as well as a declaration in support. (ECF Nos. 292-95.) In their papers, Plaintiffs represented that (1) they intended to rely on the subpoenaed records in responding to certain objections that Defendants raised regarding Plaintiffs' requested fees, costs, and nontaxable expenses, (2) they believed that the subpoenaed records were relevant and not privileged, and (3) Defendants did not agree to Plaintiffs' proposal to extend their September 26, 2023 reply deadline, and Lane Powell's deadline for providing documents responsive to Plaintiffs' subpoena, pending the Court's resolution of Defendants' motion to quash.[4] (ECF Nos. 294-95.)

On October 2, 2023, the Court held oral argument on Defendants' motion to stay and deposit funds, Plaintiffs' motion for leave to file a surresponse, and Defendants' motion to quash. (ECF No. 301.) During the hearing, the Court granted the parties' motions, "with the exception of the [motion to quash's] request for sanctions[,] which the Court took under advisement." (*Id.*)

---

[4] In their response to Plaintiffs' motion for leave, Defendants argue that Plaintiffs "made no effort before the [September 26, 2023] deadline passed to . . . confer in advance with Defendants about an extension[.]" (Defs.' Resp. Pls.' Mot. Leave ("Defs.' Leave Resp.") at 6, ECF No. 310.) The record reflects that between 3:30 and 4:30 p.m. on September 26, 2023, during the parties' conferral on Defendants' forthcoming motion to quash and request for an expedited hearing, Plaintiffs' counsel stated that he "would be amenable to . . . [an] exten[sion] [of] time for [Lane Powell] to respond to the subpoena and . . . for [his] replies on the cost bill and fee motion to a week after [he] receive[d] the records (and/or the resolution of any cross-motions to quash and compel, if no documents end up being ordered to be produced)." (ECF No. 295 at 3.) Defendants' counsel responded that he did "not agree to extend the time for [Plaintiffs'] reply." (*Id.*)

Consistent with the parties' post-hearing agreement and emails to the Court, Plaintiffs filed their motion for leave to file their reply nunc pro tunc on November 2, 2023. (ECF Nos. 308-09.) After the parties filed their respective response and reply on November 16 and November 30, 2023, the Court took Plaintiffs' fee motion and motion for leave under advisement. (ECF Nos. 310-13.)

## II.    ANALYSIS

### A.    Standard of Review

The parties dispute the applicable standard of review. Defendants argue that Rule 16(b)'s "good cause" standard governs Plaintiffs' motion for leave to file their reply nunc pro tunc. (Defs.' Leave Resp. at 4.) Plaintiffs argue that Rule 16(b)'s good cause standard "relates [only] to the pretrial scheduling order," and that the Court has "nearly unfettered discretion to arrange attorney-fee motion matters as it views to be appropriate," as reflected in Rule 54(d)(2)(D) and Local Rule 54-3(d). (Pls.' Reply Supp. Pls.' Mot. Leave ("Pls.' Leave Reply") at 2-3, ECF No. 311.)

The Court agrees that it has considerable latitude and broad discretion in this context. *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) ("The district court has considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing."); *see also Green v. City & Cnty. of S.F.*, No. 21-16465, 2023 WL 7211421, at *1 (9th Cir. Nov. 2, 2023) (noting that "[d]istrict courts have 'broad discretion' to manage pretrial litigation," and holding the district court did not abuse its discretion in striking the plaintiff's untimely filings (quoting *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002))). The Court also agrees that at minimum, it should review for good cause Plaintiffs' motion for leave to file their reply nunc pro tunc. *See Mahroom v. Hook*, 563 F.2d 1369, 1377 (9th Cir. 1977) ("The reply brief of appellant has not been considered. No good cause has been

PAGE 5 – OPINION AND ORDER

shown for the late filing and the motion to strike the reply brief is GRANTED."); *West v. Pettigrew*, No. 11-1692, 2013 WL 4403555, at *1 (E.D. Cal. Aug. 15, 2023) ("Good cause appearing, plaintiff's motion for extension of time will be granted nunc pro tunc and [the] plaintiff's reply deemed timely filed."); *Picozzi v. Nevada*, No. 22-01011, 2022 WL 17543201, at *1 (D. Nev. Nov. 16, 2022) ("[Defendant] has shown that good cause exists to extend the deadline to file its responses and exhibits, so the Court will grant its motions for that relief nunc pro tunc."); *United States v. Roach*, No. 12-03797, 2014 WL 12694223, at *3 (C.D. Cal. Mar. 5, 2014) (declining to strike an untimely reply in its entirety and noting that *Mahroom* "grant[e]d [a] motion to strike [a] reply brief because it was not timely filed and there was no good cause for the late filing").

The Court, however, derives the standard of review from Rule 6(b), not Rule 16(b). Rule 6 addresses computing and extending time, and provides, in relevant part:

> When an act may or must be done within a specified time, the court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

FED. R. CIV. P. 6(b)(1)(A)-(B).

Courts have applied Rule 6(b)'s standards under similar procedural circumstances. For example, in *Warkentin v. Federated Life Insurance Co.*, 594 F. App'x 900, 901 (9th Cir. 2014), the plaintiff "realiz[ed] [that] he failed to timely oppose [a] motion for summary judgment," and thus "filed an [untimely] opposition and request[] that the district court continue the summary judgment hearing 14 days to allow [the defendant] time to reply to [his untimely] [o]pposition." *Id.* (simplified). The plaintiff filed his "request . . . the night before the hearing on the summary judgment motion." *Id.* In vacating the district court's grant of summary judgment to the defendant and remanding for proceedings consistent with its disposition, the Ninth Circuit

explained that the plaintiff's request was "most naturally read as a motion to extend the time for filing an opposition pursuant to [Rule] 6(b)." *Id.* The Ninth Circuit further explained that "when a motion to extend time is filed 'after the time has expired,' the court may extend the time upon a showing of 'good cause' and 'excusable neglect.'" *Id.* (quoting FED. R. CIV. P. 6(b)(1)(B)). The Ninth Circuit also explained that "[t]o determine whether a party's failure to meet a deadline constitutes 'excusable neglect,' courts must apply a four-factor equitable test . . . [and] abuse[] [their] discretion by failing to engage in this four-factor test or at least the 'equitable analysis' captured by the test."[5] *Id.* (quoting *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010)).

Similarly, in *TD Ameritrade, Inc. v. Matthews*, No. 16-00136, 2021 WL 1042674, at *1 (D. Alaska Mar. 18, 2021), the plaintiff filed a motion asking the district court to accept his late filings, including an untimely opposition to a motion to dismiss. *Id.* The plaintiff "characterize[d] his motion as a request to accept the filings nunc pro tunc." *Id.* The district court explained that the plaintiff's "motion [was] better construed as a Rule 6(b) motion," because the deadline had already expired. *Id.* at *1 n.3 (citing *Warkentin*, 594 F. App'x at 901). The district court in turn applied the four-factor equitable test in granting the plaintiff's motion to accept his late filings. *Id.* at *1-2.

Several other district court decisions are in accord. *See BGH Holdings LLC v. D.L. Evans Bank*, No. 18-cv-01408, 2023 WL 3224479, at *5 n.4 (W.D. Wash. May 3, 3023) (determining that the plaintiff showed "good cause and excusable neglect for the late filing" of an opposition to a motion for summary judgment (citing, *inter alia*, FED. R. CIV. P. 6(b)(1))); *Shafer v. C.R. Bard, Inc.*, No. 20-cv-1056, 2021 WL 4305216, at *1 (W.D. Wash. Sept. 22, 2021) ("Plaintiff

---

[5] The Court describes the four-factor equitable test in greater detail below.

has failed to demonstrate good cause to extend the time for filing a response brief under Rule 6(b)(1). Plaintiff's counsel states he mis-calendared this deadline due in part to the large number of similar cases he is handling. . . . This does not demonstrate excusable neglect or good cause for granting the requested relief[.]"); *Diaz v. United States*, No. 21-cv-01285, 2021 WL 6499836, at *2 (W.D. Wash. Dec. 15, 2021) ("Regarding [the plaintiff's] request for an extension of time to file his reply, [Rule] 6(b)(1) allows the court to extend the time to file a brief 'for good cause.' . . . [T]he court finds that 'good cause' exists for [the plaintiff's] requested extension of 30 days.") (citation omitted); *Wilson v. GMAC Mortg. LLC*, No. 11-cv-00546, 2012 WL 780813, at *3 (D. Ariz. Mar. 9, 2012) ("Rule 6(b)(1) . . . addresses the process for late filings[.] . . . Here, plaintiff submitted the new declaration on his own, without filing a motion, labeling it 'nunc pro tunc.'").

### B.    Disposition

The Court concludes that Plaintiffs satisfy Rule 6(b)(1)'s standards for granting an extension, and therefore grants Plaintiffs' motion for leave to file their reply nunc pro tunc and considers Plaintiffs' reply in ruling on Plaintiffs' motion for attorney's fees and costs.

Plaintiffs filed their motion for leave to file their reply nunc pro tunc after the September 26, 2023 reply deadline had expired. A plaintiff who belatedly seeks an extension of time is required to make a showing of "good cause" and "excusable neglect," and the district court must apply a four-factor equitable test or at least an equivalent "equitable analysis." *See Warkentin*, 594 F. App'x at 901 (explaining that "when a motion to extend time is filed 'after the time has expired,' the court may extend the time upon a showing of 'good cause' and 'excusable neglect,'" and that "[a] district court abuses its discretion by failing to engage in this four-factor test or at least the 'equitable analysis' captured by the test" (quoting FED. R. CIV. P. 6(b)(1)(B) and *Ahanchian*, 624 F.3d at 1261)).

Assuming Plaintiffs are required to demonstrate good cause and excusable neglect,

Plaintiffs have done so here.[6] "To determine whether a party's failure to meet a deadline

constitutes excusable neglect, courts must apply a four-factor equitable test, examining: (1) the

danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on

the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith."

*Warkentin*, 594 F. App'x at 901 (quoting *Ahanchian*, 624 F.3d at 1261). Application of this four-

factor test supports granting Plaintiffs' motion.

///

---

[6] A party is not required to file a formal motion for an extension before a deadline expires; rather, the party need only "request" an extension and show "good cause." *See, e.g.*, *Manigault v. ABC Inc.*, 796 F. App'x 13, 15 (2d Cir. 2019) ("A district court may extend a deadline for good cause '*with or without motion or notice* if the court acts, or if a request is made, before the original time or its extension expires.' . . . [Defendant] requested an extension of time . . . prior to the . . . deadline for its answer. . . . Thus, [defendant] was not required to file a formal motion (with notice) or make a showing of excusable neglect; [defendant] needed to show only 'good cause.'" (quoting FED. R. CIV. P. 6(b)(1)(A))). Arguably, Plaintiffs sufficiently and timely "request[ed]" an extension in their response to Defendants' and Lane Powell's motion. (*See* ECF No. 294 at 2, 6, stating that (1) Plaintiffs "explicitly offered to extend the time for Lane Powell to produce the subpoenaed documents, if Defendants would agree to extend the deadline for Plaintiffs to file [their] replies," but "[d]efense counsel rejected that offer," (2) "[i]f the Court wishe[d] to stay Plaintiffs' reply deadlines on the cost bill . . . and motion for attorney fees . . . , [Plaintiffs could] take the time to brief this [fee and cost-related] issue properly," (3) Defendants argued that Plaintiffs "submitted a 'grossly inflated fees and costs motion' that [was] 'patently unreasonable,'" and "fairness require[d] that Plaintiff be given the chance to rebut that challenge by showing that defense counsel spent just as many or more hours performing the same or similar tasks," and (4) "[i]f the Court stay[ed] the response dates for Plaintiffs' costs bill and fee motion replies, [Plaintiffs] would not object to the Court modifying the subpoena to require production at a more reasonable date"). If the Court had interpreted Plaintiffs' statements as a "request" for an extension at the time, the Court would have granted the request in light of a lack of bad faith or prejudice to Defendants, as discussed below. *See* 4B Charles Alan Wright et al., *Federal Practice and Procedure* § 1165 (4th ed. Dec. 2023 update) ("Rule 6(b)(1)(A) gives the court wide discretion to grant a request for additional time that is made prior to the expiration of the period originally prescribed or prior to the expiration of the period as extended by a previous order. . . . [A]n application for extension of time under Rule 6(b)(1)(A) normally will be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party. Neither a formal motion for extension . . . nor notice to the adverse party is expressly required by the rule.") (footnotes omitted).

First, if the Court grants Plaintiffs' motion and considers Plaintiffs' ten-page reply, there is no danger of prejudice to Defendants because Plaintiffs' reply merely responds to Defendants' fee and cost objections, as Plaintiffs were permitted to do under the rules. There is also no danger of prejudice to Defendants because they sought and received an extension of the post-judgment fee and cost deadlines, and timely notice of Plaintiffs' potential need for an extension. Further, even if Plaintiffs had not subpoenaed records, it was foreseeable that Plaintiffs might need more than an expedited seven-day reply deadline if Defendants raised a number of objections pertaining to "years of billing records" and "numerous claims litigated over many years." (ECF No. 272 at 1-2.) Defendants do not argue there is any danger of prejudice to them, but instead rely on the fact that the Rule 16(b) standard requires only a lack of diligence. (*See* Defs.' Leave Resp. at 5, failing to identify any prejudice and emphasizing that the focus of the Rule 16(b) good cause inquiry is the moving party's diligence or lack thereof, not prejudice to the non-movant) (citation omitted); *Slater v. Morton*, 797 F. App'x 323, 324-25 (9th Cir. 2020) (observing that "a finding of prejudice is not required under Rule 16(b)") (citation omitted).

Second, the length of Plaintiffs' delay in filing its motion and impact on these proceedings is minimal and due in part to a stipulation related to Plaintiffs' counsel's surgery and recovery.

Third, Plaintiffs' reason for the delay was based largely on their subpoena of Lane Powell's billing records and belief that they needed the records to rebut Defendants' fee and cost objections and should wait to file until the Court resolved the parties' discovery dispute. Although the Court granted Defendants' and Lane Powell's motion to quash, Plaintiffs' reason for the delay was not inadequate or legally insufficient, especially when Plaintiffs timely notified

Defendants and the Court about their potential need for an extension of the reply deadline and the contents of Plaintiffs' reply depended on the Court's ruling on the motion to quash.

Fourth, nothing in the record or the Court's experience suggests that Plaintiffs were not acting in good faith. (*Cf.* ECF No. 314¸ finding that the subpoena "did not exceed the bounds of normal advocacy"). Defendants disagree with Plaintiffs on the merits and propriety of the subpoena, noting that Plaintiffs issued an "illegitimate subpoena" at the "very last minute" in an attempt to obtain "documents with little to no relevance to the pending matter." (Defs.' Leave Resp. at 2.) Defendants, however, do not argue that Plaintiffs acted in bad faith in issuing the subpoena or seeking additional time to file the reply.

In conclusion, the Court finds that the four-factor equitable test supports granting Plaintiffs' motion for leave to file their reply nunc pro tunc. Accordingly, the Court grants Plaintiffs' motion for leave and considers Plaintiffs' reply brief in ruling on their pending motion for fees and costs.

## DISCUSSION

Plaintiffs argue that as the prevailing parties in this FLSA case, they are entitled to an award of $725,140.50 in attorney's fees and $83,377.79 in costs under Rule 54(d), 29 U.S.C. § 216(b), and 28 U.S.C. § 1920. (Pls.' Mot. Att'y Fees & Costs ("Pls.' Fee Mot.") at 2, 11, ECF No. 279; Pls.' Bill Costs ("Cost Bill") at 1-2, ECF No. 280.) Although Defendants do not appear to dispute that Plaintiffs are prevailing parties under the FLSA's fee-shifting provision, Defendants advance several reasons why the Court should "reduce or deny" Plaintiffs' requested fees and costs. (*See* Defs.' Resp. Pls.' Mot. Att'y Fees & Nontaxable Expenses ("Defs.' Fee Resp.") at 10, ECF No. 286.)

///

///

PAGE 11 – OPINION AND ORDER

I.    **ATTORNEY'S FEES**

A.    **Applicable Law**

Courts in this circuit employ the "lodestar" method to determine a reasonable attorney's fee award in an FLSA collective action. *See Pelayo v. Platinum Limousine Servs., Inc.*, 804 F. App'x 522, 523 (9th Cir. 2020) (reviewing "the district court's attorneys' fees award following the settlement of [the] [p]laintiffs' [FLSA] claims," and holding that the "the district court abused its discretion in calculating the lodestar"); *Rother v. Lupenko*, 515 F. App'x 672, 675-77 (9th Cir. 2013) (holding that the district court, which employed the lodestar method in awarding attorney's fees in an FLSA collective action, did not abuse its discretion in reducing the award based on "limited success"). "The lodestar method is a two-step process." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) (citing *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000)).

First, "the court multiplies the number of hours the prevailing party reasonably spent on litigation by a reasonable hourly rate to determine a presumptively reasonable fee award." *Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021) (citing *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016)). This "presumptively reasonable fee award" is the "lodestar figure," *Kelly*, 822 F.3d at 1099, and the reasonable hourly rate underlying this figure is "determined by assessing 'the prevailing market rate in the relevant community.'" *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019) (quoting *Kelly*, 822 F.3d at 1099). "[T]he lodestar figure roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case[.]" *Kelly*, 822 F.3d at 1099 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)).

///

Second, "[a]fter the lodestar figure is determined, [the court may exercise its] discretion to adjust the lodestar figure upward or downward based on a variety of [reasonableness] factors 'not subsumed in the lodestar figure.'" *Roberts*, 938 F.3d at 1024 (quoting *Kelly*, 822 F.3d at 1099). These "reasonableness" factors, also "known as the *Kerr* factors," include (1) the quality of representation, (2) the results obtained, (3) the complexity and novelty of the issues presented, and (4) the risk of nonpayment. *Stetson v. Grissom*, 821 F.3d 1157, 1166-67 (9th Cir. 2016) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011) and *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992)); *see also Vogel*, 893 F.3d at 1158 ("[T]here are other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the results obtained." (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983))).

### B.    The Lodestar Figure

#### 1.    Reasonable Hourly Rates

"The first component of the lodestar [figure] is the prevailing market rate for the work done." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015). As discussed, "[t]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Id.* (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008)).

##### a.    Jon Egan's Hourly Rate

The Court first addresses the $630 hourly rate of Plaintiffs' lead counsel, Jon Egan ("Egan"). (*See* Pls.' Fee Mot. at 3-6; Decl. Jon Egan ("Egan Decl.") ¶¶ 5-9, ECF No. 281.) In this district, judges use the "most recent" Oregon State Bar ("OSB") Economic Survey (here, the

2022 OSB Economic Survey) "as a benchmark for assessing the reasonableness of hourly billing rates." *Munger v. Intel Corp.*, No. 3:22-cv-00263-HZ, 2023 WL 8433191, at *2 (D. Or. Dec. 1, 2023); *Huyck v. Shilling-Devaney*, No. 3:18-cv-00400-JR, 2022 WL 16924130, at *2 (D. Or. Nov. 14, 2022); *see also* LR 54-3(a) (providing a "Practice Tip" regarding fee motions and explaining that "[a]s for the reasonable hourly rate, the Court uses the most recent Oregon State Bar Economic Survey as its initial benchmark," and that "[a]ttorneys may argue for higher rates based on inflation, specialty, or other factors," but "the Court requests that fee petitions address the Economic Survey and provide justification for requested hourly rates higher than reported by the Survey").[7]

Egan bases his $630 hourly rate on, among other things, his twenty-three years of experience practicing law, his eighteen-plus years "specializing in Oregon state and federal wage-and-hour litigation," his "extensive experience in the specialized field of wage-and-hour class and collective actions," and the hourly rates that similarly experienced Portland attorneys charge (i.e., a median rate of $450 and ninety-fifth percentile rate of $697), as reflected in the 2022 OSB Economic Survey. (Egan Decl. ¶¶ 5-6; Pls.' Fee Mot. at 3-6.) Defendants object to Egan's reliance on Portland attorneys' hourly rates, arguing that "Egan claims to be [but is not] a 'Portland attorney'" because his office is located in Lake Oswego, Oregon. (Defs.' Fee Resp. at 1 n.2.)

Ninth Circuit and district case law supports Egan's reliance on Portland attorneys' hourly rates. "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Daley v. A&S Collection Assocs., Inc.*, No. 09-946-ST,

---

[7] As noted in *Munger*, "[t]he most recent [2022] OSB Economic Survey is available at https://www.osbar.org/_docs/resources/Econsurveys/22EconomicSurvey.pdf." 2022 WL 16924130, at *2 n.2.

2010 WL 5137834, at *3 (D. Or. Dec. 10, 2010) (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Thus, the relevant community is the Portland Division of the District of Oregon. *See id.* at *2-3 ("The bulk . . . of the hours were incurred by . . . the sole attorney at [at a law office] in Lake Oswego, Oregon. . . . Therefore, the relevant community is the Portland Division of the District of Oregon.").

Consistent with this understanding and the "local forum rule," and as Egan notes (*see* Pls.' Reply at 1), judges in this district have relied on Portland attorneys' hourly rates in awarding attorney's fees to Egan. *See Huyck*, 2022 WL 16924130, at *2 (describing Egan's experience and the "relevant Portland area hourly rates"); *Kerpan v. Biscuits Cafe, Inc.*, No. 08-cv-00811-ST, 2009 WL 1813147, at *3 (D. Or. June 23, 2009) (noting that Egan's "office is in Clackamas County, although he handles cases primarily in Portland," and turning to the hourly rates that "lawyers in Portland with [similar] years [of] experience" charge); *see also Barjon*, 132 F.3d at 500-02 (noting that "rates outside the forum may be used" but explaining that the plaintiffs' counsel failed adequately to demonstrate that the district court should have departed from the "local forum rule" and not "appl[ied] the rates of the local forum—the Sacramento area—rather than the rates of [counsel's] place of business—the San Francisco area"). Accordingly, the Court overrules Defendants' objection to Egan's reliance on Portland attorneys' hourly rates.

Defendants also object to Egan's $630 hourly rate because in some of Egan's more recent cases from this district, the judges approved "considerably lower rates." (Defs.' Fee Resp. at 1-2.) In particular, Defendants note that in a 2022 decision, a judge from this district rejected Egan's hourly rate of $547 and instead awarded $500 per hour. (*Id.*, citing *Huyck*, 2022 WL 16924130, at *2-3.)

PAGE 15 – OPINION AND ORDER

Plaintiffs argue that *Huyck* is distinguishable because this case and *Huyck* "did not involve the same issues, length, complexity, or risk." (Pls.' Leave Reply at 2.) Plaintiffs also emphasize that the 2022 OSB Economic Survey does not include a "class action" or "complex litigation" category, and that the 2022 OSB Economic Survey's sample size for the "employment law" category was insufficient to make "calculations of the relative percentiles involved, and wage-and-hour is a small subsection of even that statistically insufficient [employment law] data set." (*Id.*)

The Court finds that an hourly rate of $530 (as opposed to $630) is reasonable given Egan's experience, unique expertise, the issues presented, skill required to try a collective action, and Egan's previous awards in this district (i.e., a $400 hourly rate in 2018 and $500 in 2022). *See Wright v. Soniq Servs., Inc.*, No. 3:17-cv-01990-AC, 2018 WL 4997678, at *3-4 (D. Or. Aug. 16, 2018) (finding that an hourly rate of $400 for Egan was reasonable and acknowledging that "Egan has unique expertise in the area of wage-and-hour litigation" and noting that the district court's 2018 decision regarding a reasonable hourly rate was "consistent with previous awards for Egan's time in this district"); *Munger*, 2023 WL 8433191, at *2 (stating that in determining the reasonable hourly rate, "[c]ourts may . . . consider 'the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel and fee awards in similar cases'" (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008))).

The Court agrees with Plaintiffs that this collective action involved slightly more difficult issues and required a greater deal of skill to try than *Huyck*, the primary fee decision from this district upon which Defendants rely. (*See* Pls.' Fee Reply at 2, 7, stating that *Huyck* was a "one-person over time case," whereas this case was a "collective action spanning years of violations,

years of litigation, and over 60 plaintiffs," and adding that "108 employees opted in and presented claims at trial" and "62 [of the opt-ins] recovered damages"; Defs.' Fee Resp. at 1-2, stating that the district court in *Huyck* found that the case was not "all that difficult," and arguing that "[t]his case, too, while perhaps somewhat novel, was not complex"). Given these facts and that the *Huyck* court did not have the benefit of the 2022 OSB Economic Survey, the Court concludes that a slightly higher hourly rate is reasonable under the circumstances (i.e., $530 per hour instead of $500).

The 2022 OSB Economic Survey reflects that (1) for Portland attorneys like Egan with twenty-one to thirty years of experience, the median and ninety-fifth percentile hourly rates are $450 and $697, respectively; and (2) for Portland attorneys who specialize in civil litigation other than personal injury, the median and ninety-fifth percentile hourly rates are $410 and $685, respectively. *Cf. Huyck*, 2022 WL 16924130, at *2 (noting that 2017 OSB Economic Survey's rates for the same categories were $415, $525, $300, and $500, respectively). The 2022 OSB Economic Survey also reflects that the median hourly rate for Portland employment attorneys is a comparable $420. Given the case-specific facts discussed above, the Court finds that awarding Egan an hourly rate of $530, which falls between the median and ninety-fifth percentile rates for attorneys with comparable years of experience and practices, is reasonable. *See Wright*, 2018 WL 4997678, at *4 (relying on Egan's years of experience and where the rate fell on the ranges for experience and plaintiff's civil litigation and noting that ratings can be based on case-specific facts).

### b.  Jim Vogele's Hourly Rate

The Court next addresses the $495 hourly rate of Egan's co-counsel, Jim Vogele ("Vogele"). (*See* Pls.' Fee Mot. at 4; Egan Decl. ¶ 12.) Vogele has more than thirty years of experience practicing law, including a "substantial wage and hour background garnered

PAGE 17 – OPINION AND ORDER

primarily in California." (Decl. Jim Vogele Supp. Pls.' Mot. Fees & Costs ("Vogele Decl.") ¶¶ 3-6, ECF No. 309; Egan Decl. ¶ 12.) Although Vogele has more experience than Egan, Vogele acknowledges that Egan is "more knowledgeable and far more experienced than [Vogele] in both Oregon wage and hour law and the [FLSA]." (Vogele Decl. ¶ 6.)

In seeking a reduction to Vogele's hourly rate, Defendants acknowledge that Vogele is "more experienced" and "has been a class action lawyer longer than . . . Egan," and considering Vogele's experience and Egan's recent fee decisions from this district, such as *Huyck*, an hourly rate of $470 (instead of $495) is reasonable for Vogele. (Defs.' Fee Resp. at 1-2 & n.1.) The Court disagrees. The 2022 OSB Economic Survey reflects that (1) for Portland attorneys like Vogele with over thirty years of experience, the median and ninety-fifth percentile hourly rates are $425 and $798, respectively; and (2) for Portland attorneys who specialize in civil litigation other than personal injury, the median and ninety-fifth percentile hourly rates are $410 and $685, respectively. Vogele's hourly rate of $495 is reasonable given his experience and adequately reflects that Egan ($530) is more knowledgeable and experienced in regard to Oregon law and the FLSA.

### c.    Michèle Lauzier's Hourly Rate

The Court next addresses the $275 hourly rate of Egan's paralegal, Michèle Lauzier ("Lauzier"). (*See* Pls.' Fee Mot. at 4; Egan Decl. ¶ 4.) Lauzier has a bachelor's degree in sociology from York University in Toronto, Canada, and eighteen years of experience serving as Egan's paralegal and "specializing in wage-and-hour law." (Egan Decl. ¶ 4.) Lauzier is also an active member of the Oregon Trial Lawyers Association's paralegal section, and has "attended, viewed, or listened to all of the [continuing legal education courses as Egan over the past eighteen years]." (*Id.*)

///

In *Huyck*, the district court determined that $200 was a reasonable hourly rate for Lauzier. 2022 WL 16924130, at *3. In support of its decision, the district court noted that "up until January 2022, Egan billed $205 per hour for Lauzier's services," and that "although paralegal rates are generally considered reasonable where they do not exceed the average rate for a first-year associate, . . . the bulk of the work Lauzier performed was at the outset of [the] case or preparing exhibits and notations for a brief trial." *Id.* at *3; *see also Brinkmann v. AMB Onsite Servs.-W., Inc.*, No. 3:17-cv-00275-SI, 2021 WL 3932040, at *19 (D. Or. Sept. 2, 2021) (granting the parties' joint motion for class and collective settlement approval, performing a lodestar cross-check, and accepting Lauzier's hourly rate of $205). Four years before *Huyck*, a different judge in this district determined that $140 was a reasonable hourly rate for Lauzier. *See Wright*, 2018 WL 4997678, at *4 ("Last year, this court approved an hourly rate of $135 for a paralegal with similar experience and background performing similar services. With a slight increase for inflation, the court finds $140 is a reasonable hourly rate for Lauzier.") (citation omitted).

Citing *Huyck*, *Brinkmann*, and *Wright*, Defendants argue that $185 is a reasonable hourly rate for Lauzier. (Defs.' Fee Resp. at 2.) Plaintiffs, on the other hand, argue that Lauzier's hourly rate of $275 is reasonable given (1) the mean, median, and ninety-fifth percentile hourly rates for first-year Portland associates (i.e., $310, $300, and $538, respectively), per the 2022 OSB Economic Survey; and (2) inflation. (Pls.' Fee Mot. at 3; Egan Decl. ¶ 4.)

Plaintiffs fail adequately to demonstrate that a thirty-four percent increase in Lauzier's pre-January 2022 rate is warranted. Judges in this district have recently found lower rates reasonable when Lauzier performed comparable work. *See Huyck*, 2022 WL 16924130, at *2 n.3, *3 (declining to "rely on the U.S. Bureau of Labor Statistics Consumer Price Index Inflation

Calculator given the current unprecedented rate of inflation," finding "$200 per hour to be reasonable," and noting that "up until January 2022, Egan billed $205 per hour for Lauzier's services"). Consistent with the district court's decision in *Huyck*, this Court finds that $200 is a reasonable hourly rate for the work Lauzier performed in this case. *Cf. Poticny v. Movers & Packers Relocation Specialists LLC*, No. 3:22-cv-01243-IM, 2022 WL 18024218, at *9 (D. Or. Dec. 30, 2022) ("According to the 2020 National Utilization and Compensation Survey Report, the mean hourly billable rate for a paralegal in the Far West region, which includes the State of Oregon, is $140 per hour.").

### 2.    Hours Reasonably Expended

The second component of the lodestar figure is the number of hours reasonably expended. *See $28,000 in U.S. Currency*, 802 F.3d at 1106-07 (turning to the number of hours reasonably expended after addressing the reasonable hourly rate). A "court . . . should exclude from [the] initial fee calculation hours that were not reasonably expended." *Id.* at 1107 (quoting *Hensley*, 461 U.S. at 434). It is well settled that "[h]ours not reasonably expended are those that are 'excessive, redundant, or otherwise unnecessary.'" *Id.* at 1107-08 (quoting *Hensley*, 461 U.S. at 434).

There are two methods by which the district court can reduce the hours in an attorney's fee application. The first method entails "conduct[ing] an hour-by-hour analysis of the fee request, and exclud[ing] those hours for which it would be unreasonable to compensate the prevailing party." *Id.* at 1108 (quoting *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1206 (9th Cir. 2013)). The second method entails "mak[ing] across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a [massive] fee application." *Id.* (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992)).

A clear and concise explanation is necessary to justify reductions greater than ten percent, but a court may impose a small reduction (i.e., a "haircut" of ten percent or less) without a more specific explanation. *See Gonzalez,* 729 F.3d at 1200-03 (explaining that "when a district court reduces either the number of hours or the lodestar by a certain percentage greater than 10%, it must provide a clear and concise explanation for why it chose the specific percentage to apply," but adding that a "district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation.") (simplified).

### a.    Plaintiffs' State Law Claims

Defendants argue that the Court should exclude numerous hours from Plaintiffs' fee calculation. At the outset, Defendants emphasize that "[a]fter Plaintiffs obtained Rule 23 class certification of their state law claims in fall 2020, . . . they were dismissed on summary judgment" in September 2021, resulting in the "loss of a much larger . . . class with a much longer claims period[.]" (Defs.' Fee Resp. at 3, citing ECF No. 157.) Defendants in turn argue that these facts "negatively affect[] Plaintiffs' fees and costs entitlement" and support the imposition of a seventy-percent reduction to the 176.9 and 67.5 hours that Egan and Lauzier respectively spent on Plaintiffs' "summary judgment motion and . . . earlier certification motion."[8] (*Id.* at 4.)

///

---

[8] Defendants' fee objections include a footnote stating that Plaintiffs "should not be permitted to recover fees and costs for work done prior to [August 2018.]" (Defs.' Fee Resp. at 4 n.6.) On August 6, 2018, the previously assigned district judge adopted this Court's findings and recommendation, thereby granting in part and denying in part Defendants' motion to dismiss Plaintiffs' original complaint. (ECF Nos. 17-19.) Five days later, Plaintiffs filed their first amended complaint. (ECF No. 20.) Defendants fail to explain and cite no authority demonstrating that Plaintiffs' counsel's pre-August 2018 work is not compensable. (*See* Defs.' Fee Resp. at 4 n.6.)

Defendants' arguments regarding Plaintiffs' state law claims are not persuasive. "[A] prevailing plaintiff [is] not entitled to compensation for attorney's fees for time expended unsuccessfully pursuing claims unrelated to those on which [the] plaintiff ultimately prevailed." *Cabrales v. Cnty. of L.A.*, 935 F.2d 1050, 1052 (9th Cir. 1991) (citing *Hensley*, 461 U.S. at 434-35). It is well settled, however, that "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.* (quoting *Hensley*, 461 U.S. at 440).

As Defendants acknowledge, Plaintiffs' "state law claims were based on the same core facts as the[ir] federal" FLSA claims. (Defs.' Fee Resp. at 3.) This is significant because Defendants fail adequately to demonstrate that (1) Egan's 176.9 and Lauzier's 67.5 hours were not reasonably expended in pursuing Plaintiffs' FLSA claims, as these hours appear to have been useful and the type ordinarily necessary to secure the final result that Plaintiffs obtained in this litigation, and (2) Plaintiffs failed to win substantial relief. *See Cabrales*, 935 F.2d at 1053 (explaining that "even if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of other claims," and that "[i]f a plaintiff ultimately wins on a particular claim, she is entitled to all attorney's fees reasonably expended in pursuing that claim—even though she may have suffered some adverse rulings") (citations omitted); *Greenpeace, Inc. v. Stewart*, No. 17-35945, 2020 WL 2465321, at *8 (9th Cir. May 12, 2020) (noting that "[g]enerally, attorneys' fees may be awarded for work that is useful and of a type ordinarily necessary to secure the final result obtained from the litigation") (simplified); *see also Shame on You Prods., Inc. v. Banks*, 893 F.3d 661, 670 (9th Cir. 2018) (stating that "even losing motions may be compensable" (citing *Cabrales*, 935 F.2d at 1052-53)).

///

The Court also notes that where, as here, the plaintiffs' claims are related and based on the same core facts, practices, and theories, courts should not view the action as a series of discrete claims:

> Plaintiffs' claims [in this class action] all were related. All focused on improving Oregon's disability determination system. They "involve[d] a common core of facts" and were "based on related legal theories." *Hensley*, 461 U.S. at 435. In such cases, "[m]uch of counsel's time will be devoted generally to the litigation as a whole. . . . Such a lawsuit cannot be viewed as a series of discrete claims." *Id.*

*Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001). Consequently, in a case involving related claims, "[a] plaintiff may obtain excellent results," thus entitling him to "a fully compensatory fee," even if he does not "receiv[e] all the relief requested." *Id.* (quoting *Hensley*, 461 U.S. at 435 n.11).

Plaintiffs achieved a very good result. This action represented a multi-year legal effort to protect numerous Oregon employees from unfair employment practices and change Defendants' payday practices. Plaintiffs accomplished this mission. *Cf. id.* ("[T]he district court found that Plaintiffs had achieved an 'excellent result' and awarded a fully compensatory fee. The court stated that th[e] action 'represent[ed] eight years of sustained legal effort . . . to bring about a common good,' namely the improvement of the disability determination system in Oregon. That 'mission,' the court found, 'was accomplished.' . . . The district court did not abuse its discretion in refusing to reduce Plaintiffs' award of fees on this basis.").

Defendants suggest that Plaintiffs did not achieve a sufficiently positive result, noting that Plaintiffs' requested fees and costs are "roughly eight times more than judgment entered on the jury verdict." (Defs.' Fee Resp. at 1.) Defendants also note that after making necessary findings as to Defendants' practices, the "jury awarded only a small fraction of [Plaintiffs'] federal claims[.]" (*Id.*)

///

PAGE 23 – OPINION AND ORDER

The FLSA context is important here. "FLSA cases often involve ordinary, everyday workers who are paid hourly wages and favorable outcomes frequently result in limited recoveries." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 603-04 (2d Cir. 2020). Thus, "[w]ithout fee-shifting provisions providing compensation for counsel, employees . . . would be left with little legal recourse." *Id.* at 604. For these reasons, courts have recognized that "[f]ee awards in wage and hour cases should encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Id.* at 603 (simplified); *see also Rutti v. Lojack Corp., Inc.*, No. 06-350, 2012 WL 3151077, at *7 (C.D. Cal. July 31, 2012) ("Given the nature of the claims under the FLSA and the remedial purpose of the Act, it is not uncommon that the attorneys' fees will exceed the amount recovered by the plaintiff." (quoting *James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1347 (S.D. Fla. 2007))).

For similar reasons, this Court finds unpersuasive Defendants' suggestion that Plaintiffs' attorney's fee award must be proportionate to the jury's damages award, and that a fee reduction is warranted based solely on Plaintiffs' percentage of recovery at trial. (*See* Defs.' Fee Resp. at 1, 7, making the foregoing arguments and stating that "another 75 percent reduction" is warranted because "Plaintiffs recovered only one-seventh of the late paycheck claims they took to the jury, [and] recovered damages for only 5 percent of the employees they represented"; *but cf.* Pls.' Fee Reply at 7, stating that Defendants' "5 percent" claim is "wrong," as "108 employees opted in and presented claims at trial," and "[o]f those, 62 recovered damages," i.e., "57.4%").

///

///

///

Considering the reductions the Court imposes herein, the ratio between Plaintiffs' damages and the fee award is consistent with FLSA case law.[9] *See Howe v. Hoffman-Curtis Partners Ltd., LLP*, 215 F. App'x 341, 341-42 (5th Cir. 2007) (per curiam) (rejecting the argument that fees awarded to a successful FLSA plaintiff were "excessive" where "the plaintiff was awarded $23,357.30 in damages and $129,805.50 in attorneys' fees," and noting that "[g]iven the nature of claims under the F.L.S.A., it is not uncommon that attorney fee requests can exceed the amount of judgment in the case by many multiples" (citing, *inter alia, Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983), *overruled on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985))); *Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1311 (10th Cir. 2014) (rejecting the argument that "the district court should have reduced the fee award because . . . the jury awarded only 8% of the damages sought by the [p]laintiffs in closing argument, and . . . the fee award far exceed[ed] the damages award," explaining that the district court's finding that counsel "obtained excellent results for their clients . . . fell within the district court's discretion," and citing in support a decision upholding a full fee award, "even though the plaintiff obtained only about 1.3% of the damages she had requested") (citation omitted).

In summary, Plaintiffs are entitled to attorney's fees for the time expended unsuccessfully pursuing their state law claims, which were related to those on which Plaintiffs ultimately prevailed.

///

///

---

[9] As discussed below in Part I.C., the lodestar figure (and ultimate attorney's fee award) is $556,853.00 based on a judgment of $108,959.77 after nearly five and a half years of litigation.

### b.    Incremental, Vague, and Block-Billing

Next, Defendants argue that the Court should disallow 409.75 of Plaintiffs' hours because of block-billing. (Defs.' Resp. at 4-5.) "Block-billing is the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (simplified). "'Block-billing' [also] refers to 'any single time entry of three of more hours containing four or more tasks, or containing only two tasks where one of the tasks could have taken from a small to a substantial period of time.'" *Wright*, 2018 WL 4997678, at *5 (quoting *Lemus v. Timberland Apartments, LLC*, 876 F. Supp. 2d 1169, 1180 (D. Or. 2012)).

As a threshold matter, Defendants argue that Plaintiffs' time records "identif[y] [Egan's] work and that of . . . Lauzier on major motions and other critical events in this case with one-line descriptions that mostly lack dates or detail." (Defs.' Fee Resp. at 4.) Contrary to Defendants' argument, however, many of the billing entries related to "major motions" and "other critical events" include case-specific information useful in evaluating the reasonableness of the hours claimed.

For example, Plaintiffs' time records include numerous entries devoted to the preparation of specific filings, as well as corresponding electronic filing numbers. (*See, e.g.*, Egan Decl. at 10, "Prepare objections to F&R and alternative motion to certify question [147-48] . . . 8.0"). For present purposes and given the Court's familiarity with the case and parties' filings, entries such as this are sufficient. *See Moreno*, 534 F.3d at 1112 ("It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees," because "[t]he payoff is too uncertain, as to both the result and the amount of the fee.").

Defendants also challenge specific entries on Plaintiffs' time records. Defendants first argue that the Court should disallow "114.4 hours in 'routine emails,' . . . and 13.9 hours in

'routine phone calls.'" (Defs.' Fee Resp. at 5, quoting Egan Decl. at 7, 11.) Plaintiffs respond

that their counsel "bill[s] only at 0.05 hours (for emails) and 0.075 hours (for short telephone

calls with clients)," which "equates to 3 minutes per email and 4.5 minutes per telephone call."

(Pls.' Fee Reply at 3; Egan Decl. ¶ 10.) Plaintiffs add that their counsel does "not bill for the time

at all" when "another task [is] being done on the same day, such as preparation for a motion,"

and that efficiency and judicial economy considerations support counsel's timekeeping approach.

(Pls.' Fee Reply at 3.)

      Courts have "reduced fee awards in prior cases where counsel billed in .1 increments for

receiving emails, if it was clear from the billing records that the email in question would not take

six minutes to read." *Stavrum v. Nw. Precision Constr. LLC*, No. 21-1761-SB, 2023 WL

2761363, at *4 (D. Or. Mar. 6, 2023) (citing *Najm v. City of Portland*, No. 17-1714-SB, 2018

WL 3448461, at *3 n.4 (D. Or. June 29, 2018)). Courts have also expressed concern about this

practice. *See Najm*, 2018 WL 3448461, at *3 n.4 ("It takes only seconds to read some emails.

Even if counsel spent one full minute reviewing an email, if he instead bills six minutes (i.e., .1

hour) to read that email he could bill his clients for six hours of work that took him just one hour

to perform (i.e., 60 emails reviewed in one hour × .1 hour for each email = 6 hours of billable

time in one hour)."); *Mumford v. Eclectic Inst., Inc.*, No. 15-375-AC, 2016 WL 8711693, at *6

(D. Or. Apr. 29, 2016) ("[Counsel] billed separately for each email sent or received on this

matter at a standard rate of .1 hours. The Court is discouraged by this continued practice.");

*Arnold v. Pfizer, Inc.*, No. 10-1025-AC, 2015 WL 4603326, at *9 (D. Or. July 29, 2015) ("[T]he

practice of billing .1 hour for each and every email masks excess and redundancies.") (citation

omitted).

///

The Court recognizes that for routine emails and phone calls, Plaintiffs' counsel's practice is to bill in increments of 0.05 or 0.075, as opposed to 0.1, and at times "not . . . at all." (Pls.' Fee Reply at 3; Egan Decl. ¶ 10.) This approach lessens but does not eliminate the above concerns about incremental billing. That is especially true where, as here, there are single entries for, among other things: (1) "139 routine [p]hone calls at 0.1 each" and a total of 13.9 hours (i.e., not 0.075 hours per call), (2) 460 emails to co-counsel for a total of 23.00 hours, (3) 172 emails to the Court for a total of 8.60 hours, (4) 96 emails to court reporters for a total of 4.80 hours, and (5) 80 emails to contractors for a total of 4.00 hours. (*See* Egan Decl. at 8, 11.)

In addition to the foregoing concerns related to incremental billing, the Court notes that communications with the court are often treated as clerical in nature and generally subsumed within an attorney's hourly rate. *See Martinez v. Semi-Tropic Coop. Gine & Almond Huller, Inc.*, No. 19-cv-01581, 2023 WL 3569906, at *31 (E.D. Cal. May 19, 2023) ("This Court and others have declined to award fees for communicating with the Court—such [as] emailing or calling [a] courtroom deputy—due to the clerical nature of the task.") (citations omitted); *Covelli v. Avamere Home Health Care LLC*, No. 19-486-SI, 2022 WL 575966, at *7 (D. Or. Feb. 25, 2022) (imposing a reduction of nearly sixty percent, i.e., reducing 3.7 hours to 1.5, because counsel "charged many entries of one-tenth or more hours for reviewing minute orders, Court notices, and Court emails regarding the filing of motions and orders," and noting that "[t]asks such as reviewing Court-generated notices, notifying clients of court hearings, filing documents with the Court, communication with court staff, scheduling, and corresponding regarding deadlines, are clerical and not compensable") (citation omitted); *Miller v. Schmitz*, No. 12-137, 2017 WL 633892, at *7 (E.D. Cal. Feb. 15, 2017) (excluding email communications with courtroom deputies, court reporters, and document companies as clerical and noting that "counsel [was] a

solo practitioner and may not have secretarial support for these types of tasks, [but] there [was]
nothing in the record to establish clerical tasks are not generally subsumed within an attorney's
hourly rate").

Courts have also declined to award attorney's fees for email communications lacking an
adequate description. *See Miller*, 2017 WL 633892, at *9 ("Defendants identify a large block of
[the plaintiff's counsel's] time spent on email communications that lacks any description
whatsoever. Specifically, over 40 emails were billed as 'Email correspondence re: Miller
Case.' . . . This type of billing entry does not meet counsel's burden to show how time was spent,
and there is so little detail the Court cannot determine whether it was reasonable.") (citations
omitted). Plaintiffs' descriptions identify the "[e]mail correspondent" (Egan Decl. at 8) (bold
omitted), but lack sufficient detail to evaluate whether they were reasonable. *See Welch*, 480
F.3d at 948 (stating that "[t]he fee applicant bears the burden of documenting the appropriate
hours expended in the litigation and must submit evidence in support of those hours worked," it
was "reasonable for the district court to conclude that [the plaintiff] failed to carry her burden,
because [certain billing entries] ma[de] it more difficult to determine how much time was spent
on particular activities," and a "court may reduce hours to offset poorly documented billing")
(simplified); *$28,000 in U.S. Currency*, 802 F.3d at 1106 ("The applicant has an initial burden of
production, under which it must produce satisfactory evidence establishing the reasonableness of
the requested fee. This evidence must include. . . detailed documentation of the hours worked.")
(simplified).

In light of these concerns, the Court concludes that reductions are warranted here with
respect to Plaintiffs' inadequately described and documented entries for 2,288 "minor or routine
emails" (114.40 hours, including 36.4 combined hours for emails to the Court, co-counsel, and

court reporters) and 139 "routine [p]hone calls" (13.9 hours at a rate of "0.1 each"). (*See* Egan Decl. at 8, 11.) Counsel acknowledges that the 139 routine phone calls should have been billed at a rate of 0.075 (*see* Pls.' Fee Reply at 3), thus reducing the 13.9 hours billed to 10.425 hours. This produces an adjusted combined total of 124.825 hours for routine emails and phone calls.

To account for counsel's vague, inadequately described, clerical, and incremental billings entries, the Court imposes a reduction of approximately thirty percent to the routine email and phone call entries, and awards only 87 combined hours (instead of 124.825) for these two categories. *See Avila v. L.A. Police Dep't*, 758 F.3d 1096, 1105 (9th Cir. 2014) (addressing a fee award under the FLSA and explaining that given its "careful explanations of its reasons for the award," the district court did not abuse its discretion in imposing, among other things, a deduction of "30% [to] the time [attributable to] vague billing descriptions"); *see also Welch*, 480 F.3d at 948 (finding that "the district court clearly erred in applying a [twenty] percent reduction to *all* of [the plaintiff's] requested hours" due to block-billing, and explaining that because "barely more than half of all hours submitted by [the plaintiff's] counsel were block-billed," the district court's twenty percent reduction "effectively served as a [forty] percent penalty on those hours actually block-billed, well above the [ten to thirty percent] range justified by [a California State Bar] Fee Report").

Defendants' remaining challenge concerns "at least 11 entries," which "total 255.1 hours [and what Defendants believe] are impermissible block-billing." (Defs.' Fee Resp. at 5.) Defendants cite only three examples in support (not eleven or more) and fail to explain how they arrived at 255.1 hours. (*See id.*) The examples that Defendants cite are: (1) "[p]repare response to Ds' motion for summary judgment, cross-motion for same [104-08] . . . 39.3 [hours]," (2) "[o]mnibus trial prep including reviewing all discovery and deposition testimony . . . 42.8

[hours]," and (3) "[t]rial prep, curate exhibits, cross-reference testimony . . . 17.1 [hours]." (*See* Egan Decl. at 9-10, 13, listing the first two examples for Egan and last for Lauzier; Defs.' Fee Resp. at 5.)

The examples Defendants cite, coupled with the Court's own review of Plaintiffs' billing records, fail adequately to demonstrate that further reduction is warranted because of block-billing. As discussed, billing entries such as the one for 39.3 hours—which concerns ECF Nos. 104-08 and Egan's preparation of a 45-page summary judgment response and attachment, 164-page declaration and exhibits, 295-page declaration and exhibits, 1-page cross-motion for summary judgment incorporating his response arguments and exhibits by reference, and 3-page proposed notice plan—are sufficient given the Court's familiarity with the case and parties' filings. The same can be said of Egan's 42.8 hours preparing for four days of trial.[10] *See Union Pac. R.R. Co. v. Winecup Gamble, Inc.*, No. 3:17-cv-00477, 2023 WL 4052413, at *3 (D. Nev. June 16, 2023) (reflecting that the district court "review[ed] the hours and type of work that . . . counsel devoted to pre-trial preparation," and determined that it was "satisfied that the fees incurred during pre-trial preparation were reasonable"). The description of Lauzier's 17.1 hours of trial preparation work is likewise sufficient and reflective of her hourly rate. *See Huyck*, 2022 WL 16924130, at *3 (finding a reduced hourly rate of $200 reasonable for Lauzier, in part because like *Wright*, Lauzier devoted many hours to, among other things, preparing exhibits for trial).

### c.    Other Clerical Tasks

Defendants object to "[m]uch of the time claimed for Lauzier [because it] is clerical." (Defs.' Fee Resp. at 5.) For example, Defendants cite "49 entries totaling 153.9 hours that are

---

[10] As explained below, Egan's aggregated entries do impact the Court's assessment of Vogele's entries.

'review, proofread and finalize' particular pleadings or documents." (*Id.*, quoting Egan Decl. at 11-13.) Plaintiffs respond that Lauzier's "billed work is that of a paralegal—evaluating the consistency and persuasiveness of arguments, making sure that the cited cases and statutes say what is indicated in the briefing, checking for spelling and grammar errors, proofreading case captions and footers, curating appropriate exhibits to suggest to counsel, etc." (Pls.' Fee Reply at 4.) Plaintiffs also state that "[s]ome firms might even employ an associate attorney to do such work." (*Id.*)

Plaintiffs' arguments are unpersuasive. Like Defendants, the Court identified forty-nine Lauzier billing entries for "[r]eview[ing], proofread[ing], and finaliz[ing]" various pleadings and case-related documents. (*See* Egan Decl. at 11-13.) By the Court's count, these forty-nine entries result in a combined total of 149.8 hours, not 153.9 hours. (*See id.*) Even if a firm might employ an associate to perform such work, that does not mean it is compensable. *Cf. Prison Legal News v. Umatilla Cnty.*, No. 12-1101-SU, 2013 WL 2156471, at *9 (D. Or. May 16, 2013) ("[The plaintiff's] invoices that include billing entries for clerical tasks should be omitted. Tasks that are secretarial or clerical in nature, such as proofreading, . . . are not compensable because they are overhead and thus already reflected in the hourly billing rate.") (simplified); *Bark v. Northrop*, 300 F.R.D. 486, 494 (D. Or. 2014) ("[A] two year associate[] spent all of the time she billed cite-checking an early version [of the] motion for a protective order, which was reviewed and revised by several other attorneys. 'Tasks that are secretarial or clerical in nature, such as proofreading, . . . are not compensable because they are overhead and thus already reflected in the hourly billing rate.'" (quoting *Prison Legal News*, 2013 WL 2156471, at *9)).

Also noteworthy is that Plaintiffs' arguments and Lauzier's billing descriptions fail to convince the Court that these entries pertain to anything more than clerical, non-compensable

overhead. Nor can the Court discern whether or to what extent Lauzier's hours reviewing, proofreading, and finalizing case-related documents were duplicative of Egan's hours preparing the documents.

Accordingly, the Court concludes that Lauzier's forty-nine entries and 149.8 hours reviewing, proofreading, and finalizing case documents are not compensable because they are clerical tasks.

Next, Defendants object to Lauzier's twenty-one entries for "assist[ing] and attend[ing]" case hearings, conferences, and depositions, which result in approximately 55 total hours. (*See* Defs.' Fee Resp. at 5, quoting Egan Decl. at 11-3.) Defendants argue that Lauzier was "consistently a silent background observer" and "observed paralegal function in such instances was negligible." (*Id.*, citing Decl. Douglas Parker Supp. Defs.' Fee Resp. ("Parker Decl.") at 2, ECF No. 287.) Defendants thus submit that a reduction of seventy-five percent or more is appropriate. (*Id.*)

Plaintiffs respond that contrary to Defendants' argument, Lauzier is an "active" participant during hearings, conferences, and depositions, because "she takes notes, she provides documents to plaintiff's counsel when needed, and she passes notes to him when appropriate." (Pls.' Fee Reply at 4.) Plaintiffs added that "[t]hese are similar to the tasks performed by a second-chair attorney (e.g., those who attended every hearing for defense counsel), so Plaintiffs' counsel actually bills less for such proceedings than a defense firm who sends two attorneys." (*Id.* at 4-5.)

The Court agrees with Plaintiffs that Lauzier's hours attending and assisting Egan with hearings, conferences, and depositions are compensable. Other courts have reached similar conclusions. *See Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1283 (N.D. Cal. 2014)

(distinguishing a case where the law firm failed to offer any explanation regarding the paralegal's need to attend a case management conference because "counsel provide[d] reasons for [the paralegal's] attendance at [certain] non-trial events," and noting that counsel stated that the paralegal was "very helpful in making important documents available and taking extensive notes"); *Brandon E. v. Dep't of Educ., State of Haw.*, No. 07-536, 2008 WL 4602533, at *10 (D. Haw. Oct. 16, 2008) ("Plaintiffs argue that Mr. Ellis' time is compensable because he performs necessary paralegal services as Mr. Levin's second-chair. This Court agrees and finds that Mr. Ellis' time for appearances with Mr. Levin at administrative and court proceedings is compensable."); *see also Cosby v. Autozone, Inc.*, No. 08-505, 2010 WL 5232992, at *5 (E.D. Cal. Dec. 16, 2010) ("These arguments are without merit. Plaintiff's paralegals performed functions specific to this case, such as interviewing witnesses and attending trial. These fees are recoverable.").

Based on these authorities, the Court rejects Defendants' objections regarding Lauzier's attendance and assistance during hearings, conferences, and depositions. The Court also notes that Defendants do not cite any authority to the contrary or otherwise. (*See* Defs.' Fee Resp. at 5.)

### d.    Vogele's Hours

Defendants argue that there are several reasons the Court should reduce Vogele's hours. (*Id.* at 6.) Although Defendants had three attorneys present throughout trial and "do not disagree with Plaintiffs' decision to include . . . Vogele on their trial team," Defendants argue that Vogele's "four [daily] entries for attendance at trial . . . should be disallowed as duplicative." (*Id.*) In support, Defendants emphasize that "Vogele had virtually no speaking role at the trial." (*Id.*)

///

Plaintiffs are entitled to recover for Vogele's time serving as second chair at trial. *Cf.*

*Moon v. Gab Kwon*, No. 99-11810, 2002 WL 31512816, at *5 (S.D.N.Y. Nov. 8, 2002)

("Defendants dispute . . . the 18.5 hours Ms. Cooper recorded for second-seating the

trial. . . . Defendants neglect to mention, however, that they were represented by a three-person

trial team . . . , and presumably were properly charged for the time of all three. Since it is

common practice for law firms with paying clients to send more than one lawyer to trials and

other court proceedings, there is no reason why [the plaintiff] should not recover fees for Ms.

Cooper's time spent at trial.").

Defendants also argue that the Court should disallow Vogele's fifty "entries for

emails . . . to and from Egan totaling 13.4 hours[.]" (Defs.' Fee Resp. at 6, citing Egan Decl. at

14-19.) In support of this argument, Defendants note that "two attorneys cannot bill for

communicating with each other, as such time is duplicative and unnecessary." (*Id.*, quoting

*Muller v. Country Mut. Ins. Co.*, No. 14-1345-MO, 2017 WL 6209701, at *5 (D. Or. Dec. 8,

2018).)

In *Muller*, the district court explained that "[a] party is certainly free to hire and pay as

many lawyers as it wishes, but cannot expect to shift the cost of any redundancies to its

opponent," and that "generally, when attorneys hold a telephone or personal conference, good

billing judgment mandates that only one attorney should bill that conference to the client, not

both attorneys." 2017 WL 6209701, at *5 (simplified). The district court further explained that

"some courts have strictly applied this rule, concluding that 'in general, two attorneys cannot bill

for communicating with each other, as such time is duplicative and unnecessary.'" *Id.* (citation

omitted). After making these observations, the district court deducted only the double-billed

hours attributable to "attorney and/or legal staff conferences," or "intra-office communications." *Id.*

Although it noted that a sister district court "strictly applied [the above] rule" and concluded that "two attorneys cannot bill for communicating with each other," the district court in *Muller* reached a different conclusion and disallowed only the duplicative intra-office communications. Here, the Court imposed a reduction to Egan's billing for emails, including emails to Vogele, in part because they lacked sufficient detail and were based on incremental billing. Vogele's email entries include more detail and are not presented in an aggregated form. (*See* Egan Decl. at 14-19.) Vogele's email entries, however, also include incremental billings of 0.1, 0.2, and 0.3 hours for generic tasks like "[e]mail [Egan] re legal issues and pre-trial work assignments," as well as references and related time attributable to proofreading case filings. (*See id.*) Thus, like Egan's and Lauzier's billing entries, the Court must reduce Vogele's claimed hours.

Finally, Defendants object to thirteen of Vogele's entries from February 19 through March 3, 2023, which amount to 31.1 hours for reviewing depositions and preparing summaries and deposition designations. (Defs.' Fee Resp. at 6, citing Egan Decl. at 14-15.) Defendants argue that these entries are duplicative of the 42.8 hours Egan billed for "[o]mnibus trial prep including reviewing all discovery and deposition testimony." (*Id.*, quoting Egan Decl. at 10.) Referring to specific billing dates and the corresponding number of hours billed (81.9 total hours), Defendants also argue that some of Vogele's other entries "appear" duplicative of Egan's work. (*Id.*)

It is difficult to assess whether aspects of Vogele's work were reasonable and necessary and not duplicative of Egan's work when, for example, Egan billed 42.8 hours in a single entry

for trial preparation, including "reviewing all discovery and deposition testimony," and Vogele billed for reviewing unspecified depositions as part of his trial preparation. (*See* Egan Decl. at 10, 14-19.) The Court also notes that in responding to Defendants' objections to Vogele's hours, Plaintiffs addressed only Vogele's time serving as second-chair counsel during trial. (*See* Pls.' Fee Reply at 3.)

To account for the foregoing issues related to Vogele's vague, incremental, and proofreading-related billing entries and the Court's inability adequately to evaluate whether certain work was unnecessary or duplicative, the Court concludes that it is appropriate to impose a small, approximately ten percent reduction (i.e., a "haircut") to Vogele's total claimed hours of 256.8. Consequently, the Court reduces Vogele's 256.8 total hours to 230 hours. *See Gonzalez*, 729 F.3d at 1200-03 (explaining that a "court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation" (quoting *Moreno*, 534 F.3d at 1112)); *see also Mumford*, 2016 WL 8711693, at *6-7 (eliminating "entries for intra-office emails and conferences [because they were] duplicative" and citing an example of a thirteen percent reduction for incremental billing of "intra-office emails").

### 3.    Conclusion

After considering Defendants' objections, the Court finds that the following hourly rates are reasonable: (1) $530 (as opposed to $630) for Egan, (2) $495 for Vogele, and (3) $200 (as opposed to $275) for Lauzier. With respect to the number of hours reasonably expended, the Court finds that: (1) Egan is entitled to 87 total hours for his routine emails and phone calls (as opposed to 128.3 total hours, or 114.4 and 13.9 hours, respectively), (2) Lauzier is not entitled to the 149.8 hours she billed for clerical tasks, and (3) Vogele's total hours must be reduced from 256.8 to 230.

Egan, Lauzier, and Vogele initially billed for 834.4, 263.1, and 256.8 hours, respectively. (Pls.' Fee Mot. at 6.) Given the Court's findings as to the reasonable number of hours and hourly rates, the lodestar figure is $556,853.00 instead of $725,140.50. (*See id.*) This lodestar figure reflects that: (1) 793.1 of Egan's hours were reasonable (i.e., 834.4 hours minus 41.3 hours attributable to routine email and phone call entries) and multiplied by $530, producing a total of $420,343.00, (2) 113.3 of Lauzier's hours were reasonable (i.e., 263.1 hours minus 149.8 hours attributable to clerical overhead entries) and multiplied by $200, producing a total of $22,660.00, and (3) 230 of Vogele's hours were reasonable and multiplied by $495, producing a total of $113,850.00.

## C.    Adjustments to the Lodestar

It is well settled that "[t]he lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation." *Hood River Cnty. Sch. Dist. v. Student*, No. 3:20-cv-01690-SI, 2022 WL 1153986, at *5 (D. Or. Apr. 19, 2022) (quoting *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993)). A district "court may rely on any of these factors to increase or decrease the lodestar figure, [but] there is a 'strong presumption that the lodestar is the reasonable fee.'" *Id.* (quoting *Crawford v. Astrue*, 586 F.3d 1142, 1149 (9th Cir. 2009)).

Plaintiffs cite various reasons the Court should increase (i.e., apply a positive multiplier) to the lodestar. (*See* Pls.' Fee Mot. at 8-11.) Defendants, on the other hand, argue that the Court should decrease (i.e., apply a negative multiplier) to the lodestar considering Plaintiffs' "limited result" (a judgment of $108,959.77 based on sixty-two employees' damages and three untimely pay periods). (*See* Defs.' Fee Resp. at 6; Pls.' Fee Reply at 7.) In so arguing, Defendants focus on the parties' offers during an August 31, 2022 settlement conference. (Defs.' Fee Resp. at 7.)

Consistent with the strong presumption that the lodestar is the reasonable fee, the Court declines to increase or decrease the lodestar. The factors that Plaintiffs cite are already reflected in the lodestar calculation.

The parties' papers also reflect that during the settlement conference, Defendants offered only $60,000.00 to settle Plaintiffs' FLSA claims, which ultimately resulted in a judgment of $108,959.77 and Plaintiffs' counsel's entitlement to attorney's fees and costs. (*See* Parker Decl. ¶ 6; Defs.' Fee Resp. at 7; *see also* Pls.' Leave Reply at 7, demonstrating that Egan represents that a counteroffer of $60,000.00 was Defendants' "last, best, and final offer" and "*inclusive* of attorney fees and costs" after nearly four and a half years of litigation). Accounting for offers that included state court claims, Defendants argue that Plaintiffs' "unrealistically high position taken at the settlement conference . . . forced the parties into many more months of litigation and trial," and thus encourage the Court to reduce the lodestar "by another 75 percent." (Defs.' Fee Resp. at 7.)

Such a reduction would be inappropriate here. The facts and FLSA case law suggested early in this litigation that at minimum, Plaintiffs likely would prevail on their claims based on the three pay periods in question, thus entitling counsel to reasonable attorney's fees and costs after years of litigation. The jury's damage award and Court's fee awards are comparable to other FLSA cases. *See, e.g.*, *Howe*, 215 F. App'x at 341-42 (rejecting the argument that fees awarded to a successful FLSA plaintiff were "excessive" where "the plaintiff was awarded $23,357.30 in damages and $129,805.50 in attorneys' fees," and explaining that "[g]iven the nature of claims under the F.L.S.A., it is not uncommon that attorney fee requests can exceed the amount of judgment in the case by many multiples") (simplified); *Garcia*, 770 F.3d at 1311 (declining to find that "the district court should have reduced the fee award because . . . the jury

awarded only 8% of the damages sought by the [p]laintiffs in closing argument, and . . . the fee award far exceed[ed] the damages award," and citing a decision upholding a full fee award, "even though the plaintiff obtained only about 1.3% of the damages she had requested") (citation omitted); *see also Boconvi v. Velocity Express*, LLC, No. 17-cv-02623-JST, 2018 WL 2248988, at *5 (N.D. Cal. May 17, 2018) ("Defendants argue that Plaintiffs' fee application is out of line with awards in similar [FLSA] cases because their requested fees are over 36.6 times their actual recovery. . . . This argument is a strawman and not persuasive. . . . Defendants have been aware from the inception of the case that the FSLA is a fee-shifting statute that guarantees reasonable payment for the time and effort expended if the case is won. . . . When judgment is entered in favor of plaintiffs, the case is clearly 'won.' Finally, Defendants litigated this case in a way that was likely to produce high attorney fees. Not surprisingly, it did so. Plaintiffs' counsel are entitled to be compensated for the effort required to reach this stage of the litigation.") (simplified).

In short, the relevant factors do not support an upward or downward departure from the lodestar amount, and therefore the Court declines to adjust its calculation.

## II.    TAXABLE COSTS

In their bill of costs, Plaintiffs seek to recover the following: (1) $400 for the filing fee, (2) $80.00 in "[f]ees for witnesses, (3) $20.00 in "[d]ocket fees under 28 U.S.C. [§] 1923," (4) $12,708.52 for "printed or electronically recorded transcripts necessarily obtained for use in the case," and (5) $973.50 in "[f]ees and disbursements for printing." (Cost Bill at 1.)

### A.    Applicable Law

"Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed by the prevailing party." FED. R. CIV. P. 54(d)(1). "By its terms, [Rule 54(d)(1)] creates a presumption in favor of awarding costs to a prevailing

party[.]" *Ass'n Mexican-Am. Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000) (en banc) (citation omitted). Thus, it is "incumbent upon the losing party to demonstrate why the costs should not be awarded." *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1079 (9th Cir. 1999) (citation omitted).

Taxable costs, like those that Plaintiffs request in their bill of costs, "are limited to a specific set of items delineated in 28 U.S.C. § 1920[.]" *Draper v. Rosario*, 836 F.3d 1072, 1086 n.9 (9th Cir. 2016). As the Ninth Circuit observed in *Draper*, these items "include 'fees of the clerk and marshal; certain fees for transcripts; certain fees for printing and witnesses; the costs of copies needed for use in the case; docketing fees; and compensation of court appointed experts and interpreters.'" *Id.* (quoting *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 579 (9th Cir. 2010)).

### B.    Analysis

#### 1.    Filing Fees

Defendants acknowledge that the $400 filing fee Plaintiffs seek to recover is among those delineated in § 1920. (*See* Defs.' Fee Resp. at 9.) Defendants, however, dispute whether Plaintiffs have shown that "filing fees . . . were, in fact, necessary to the case." (*Id.*) (simplified).

Plaintiffs necessarily paid a $400 filing fee to initiate this suit. (*See* ECF No. 1, "Filing fee in the amount of $400 collected.") Plaintiffs are entitled to recover this cost. *See Wright*, 2018 WL 4997678, at *6 ("Wright is entitled to recover the $400 filing fee required by the court.").

#### 2.    Witness Fees

Defendants do not raise any specific challenge to Plaintiffs' request for $80 in fees for the two days that their witness, Jennifer Murphy ("Murphy"), attended trial. (*See* Defs.' Fee Resp. at

9-10; Cost Bill at 2.) Plaintiffs are entitled to $80 in witness fees. *See Draper*, 836 F.3d at 1086 n.9.

### 3.    Docketing Fees

Defendants do not raise any specific objection to Plaintiffs' request to recover $20.00 in docket fees under 28 U.S.C. § 1923. (*See* Defs.' Fee Resp. at 9.) Such fees are among the items delineated in 28 U.S.C. § 1920. Accordingly, Plaintiffs are entitled to recover $20.00 in docket fees.

### 4.    Printed or Electronically Recorded Transcripts

Defendants object to Plaintiffs' request to recover $12,708.52 for printed or electronically recorded transcripts (i.e., $7,286.42 for deposition transcripts and video, plus $5,422.10 for pretrial and trial transcripts). (*See* Defs.' Fee Resp. at 9; Egan Decl. at 19-20; Cost Bill at 1.) Defendants argue that Plaintiffs fail to demonstrate that any transcript was necessarily obtained for use in this case. (Defs. Fee Resp. at 9.)

It is "incumbent upon the losing party to demonstrate why the costs should not be awarded," *Stanley*, 178 F.3d at 1079 (citation omitted), yet Defendants do not attempt to address Plaintiffs' invoices when arguing that Plaintiffs "do not identify which transcripts were obtained for what purpose or who the witness was." (*See* Defs.' Fee Resp. at 9; *cf.* Egan Decl. at 24-44, 72, invoicing for, among other things, transcripts related to specific events, parties, and trial witnesses). Plaintiffs' counsel also notes that he "ordered all of the same transcripts that defense counsel has ordered; they were used in summary judgment and played as trial." (Pls.' Fee Reply at 9.)

The Court has reviewed Plaintiffs' invoices (*see* Egan Decl. at 24-44, 72, highlighting sums that produce a combined total of $12,708.52), and concludes—based in large part on the Court's familiarity with the case—that Plaintiffs necessarily obtained the transcripts for use in

this litigation. *See Schultz v. Nw. Permanente P.C.*, No. 3:20-cv-00626-IM, 2022 WL 3909948, at *2 (D. Or. Aug. 31, 2022) (recognizing that a court may "allow[] taxing of '[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case.'" (quoting 28 U.S.C. § 1920(2)). As such, Plaintiffs are entitled to recover $12,708.52.

### 5.    Printing Fees

Defendants object to Plaintiffs' request for $973.50 in printing fees on similar grounds. (*See* Defs.' Fee Resp. at 9.) Defendants argue that Plaintiffs fail to show that any copies were necessarily obtained for use in this case, or explain "how many copies were made or what they were of or for." (*Id.*)

In his declaration, Egan declares under penalty of perjury that there were "3,894 pages" of "[p]hotocopies/printing," which cost "$973.50." (Egan Decl. at 20-21.) Egan also attached to his declaration "[d]ocumentation of those fees with documentation[.]" (*Id.* at 20.) The Court has reviewed and compared the relevant sums that Egan highlighted in his cost and nontaxable expense chart and attachments for "fees with documentation," and it does not appear that there is any documentation supporting the $973.50 in printing and photocopying costs. (*See id.* at 20-21, 24-86.)

Accordingly, the Court declines to award Plaintiffs $973.50 in printing and photocopying costs. *See Lenon v. Starbucks Corp.*, No. 3:11-cv-01085–BR, 2012 WL 1377042, at *8 (D. Or. Apr. 19, 2012) ("Plaintiff's counsel does not provide any explanation or documentation in his Declaration or Affidavit to substantiate the $35.40 in costs for printing set out in the Bill of Costs except to note the costs were for copies and faxes. In the exercise of its discretion, therefore, the Court does not award Plaintiff costs for printing."); *Robinson v. Kia Motors Am., Inc.*, No. 2:10-cv-03187, 2016 WL 4474505, at *4 (E.D. Cal. Aug. 25, 2016) ("[C]ourts who have addressed the taxation of photocopying costs under § 1920 generally require the prevailing party to show

that the photocopying costs were necessary to the case. . . . These cases draw a distinction between those expenses necessary to the action and those intended for the convenience of counsel.") (simplified).

### C.    Conclusion

Plaintiffs are entitled to $13,208.52 (i.e., $14,182.02 minus $973.50) in taxable costs. (Cost Bill at 1.)

## III.    NONTAXABLE EXPENSES

In addition to taxable costs under 28 U.S.C. § 1920, Plaintiffs also seek to recover various nontaxable expenses. Specifically, Plaintiffs seek to recover (1) $9,051.00 for trial audio-video assistance, (2) $14,437.33 for the collective action notice and website, (3) $2,225.00 for pay stub data entry, (4) $214.45 in court document delivery fees, (5) $29,373.80 for Murphy's trial preparation and testimony, (6) $124.98 for counsel's mileage to and from court hearings, depositions, and trial, (7) $137.00 in office fees, (8) $75.13 in postage, (9) $7,111.50 for scanning, (10) $690.00 for venire panel research, and (11) $5,855.58 in Westlaw and PACER charges. (*See* Egan Decl. at 19-20; *see also id.* at 73-74, 50-71, 76-85, 46-49, 86, and 75, attaching the fee documentation for categories (1)-(5) and (9)-(10), respectively, but not (6)-(8) or (11)).

### A.    Applicable Law

"In an action under the FLSA, a prevailing plaintiff is entitled to recover 'a reasonable attorney's fee to be paid by the defendant, and costs of the action.'" *Mumford*, 2016 WL 8711693, at *8 (quoting 29 U.S.C. § 216(b)). Judges in this district have recognized that the phrase "'[c]osts of the action' can include costs beyond those normally allowed under [Rule] 54(d) and 28 U.S.C. § 1920." *Id.* (quoting *Robledo v. Orellana*, No. 3:11-cv-00758-BR, 2012 WL 442122, at *3 (D. Or. Feb. 10, 2012)). As a result, judges in this district have awarded

PAGE 44 – OPINION AND ORDER

various nontaxable expenses to prevailing FLSA plaintiffs, such as "expenses for legal

research . . . and postage." *Id.* They have also awarded costs for mileage and administrative

office fees. *See Huyck*, 2022 WL 16924130, at *5.

      **B.**     **Analysis**

          **1.**     **Postage and Administrative Office Fees**

Defendants do not object to Plaintiffs' request for nontaxable expenses related to their

postage and administrative office fees. (*See* Defs.' Fee Resp. at 9-10.) Plaintiffs are entitled to

these nontaxable expenses. *See Huyck*, 2022 WL 16924130, at *5 (awarding both of these

expenses).

          **2.**     **Mileage and Court Document Delivery Fees**

Defendants question whether Plaintiffs provided adequate documentation for the Court to

evaluate the reasonableness of Plaintiffs' $124.98 and $214.15 in expenses for mileage and court

document delivery fees, respectively. (*See* Defs.' Fee Rep. at 9.) Defendants add that Plaintiffs

failed to explain "whose mileage is at issue from what date . . . or what caused delivery fees."

(*Id.*)

Plaintiffs provided adequate documentation of their court document delivery fees. (*See*

Egan Decl. at 76-85, providing dates when Egan had case filings and documents delivered to the

Court). Egan also represented his mileage is charged at the "current IRS rate of 62.5 cents per

mile" and relates to trips to and from court hearings, depositions, and the four days of trial. (*Id.* at

19-20.) The Court concludes that these are reasonable out-of-pocket expenses.

          **3.**     **Westlaw and PACER Charges**

Defendants object to Plaintiffs' request for $5,855.58 in Westlaw and PACER charges on

the ground that they are overhead costs and "not recoverable under the legal authorities upon

which Plaintiffs' rely." (Defs.' Fee Resp. at 10, quoting, *inter alia*, *Wright*, 2018 WL 4997678, at *2.)

At the outset, the Court notes that Defendants quote the wrong portion of *Wright*. In *Wright*, the district court stated that "Westlaw charges . . . are recoverable as out-of-pocket expenses" and a judge in this district had "previously awarded similar costs under the [FLSA]." 2018 WL 4997678, at *6 (quoting *Robledo*, 2012 WL 442122, at *3). After noting that *Robledo* awarded nontaxable expenses for "LEXIS charges," the district court in *Wright* awarded Egan "$28.01 in nontaxable costs," which included, among other things, Egan's "Westlaw charges." *Id.*; *see also Robledo*, 2012 WL 442122, at *3 (awarding $421.73 in expenses, which included "computerized research").

That said, *Wright* is distinguishable insofar as the defendant there did not object to Egan's expenses. *See id.* The Court is also concerned about Egan's lack of documentation and explanation regarding these Westlaw and PACER charges. Egan states that these charges pertain to legal research but does not break down how much of the $5,855.58 is attributable to Westlaw versus PACER, or explain why he could not provide records of the unspecified number of $0.10 PACER pages. (*See* Egan Decl. at 19-20.) The Court also notes that the FLSA cases from this district appear to have awarded relatively small amounts for nontaxable legal research-related expenses, which is different than what Egan seeks here. (*See id.* at 19, stating that the Westlaw charges that Egan "apportioned to each client constitute that client's pro rata share of the firm's monthly negotiated rate with Westlaw, based on the research conducted for client in a given month").

"Under the [FLSA], costs of the action include *reasonable* out-of-pocket expenses." *Robledo*, 2012 WL 442122, at *3 (emphasis added) (simplified). Egan has not demonstrated that

his Westlaw and PACER charges are reasonable, let alone an expense a client typically covers.[11]

*See Cilluffo v. Cent. Refrigerated Servs., Inc.*, No. 12-886, 2018 WL 11374960, at *9 (C.D. Cal.

Apr. 3, 2018) ("The Court is concerned about the inclusion of [nontaxable expenses] attributed to

computerized legal research [in this FLSA action]. Before approving of the costs attributed to the

use of Westlaw and LEXIS services, the Court requires assurance that these charges are

customarily charged to paying clients rather than being subsumed into Plaintiff's counsel's

overhead."); *see also Chevron U.S.A., Inc. v. Pelican Butte Oil, LLC*, No. 10-3063-CL, 2011 WL

1398932, at *4 (D. Or. Jan. 31, 2011) ("Legal research fees, such as Westlaw and Lexis Nexis

fees, are generally considered by the court to be overhead and therefore not properly considered

costs that may be awarded.").

For these reasons, Plaintiffs are not entitled to recover $5,855.58 in Westlaw and PACER

charges.

### 4.    Collective Notice and Website

Defendants object to Plaintiffs' request for $14,437.33 in nontaxable expenses for the

collective action notice and website on the ground that such expenses are not authorized under

"§ 1920 or any other statute." (Defs.' Fee Resp. at 10.) As discussed, the "costs of the action" is

not so limited. In the Court's view, Plaintiffs' expenses for the collective notice and website are

adequately documented (*see* Egan Decl. at 50-71), and a reasonable out-of-pocket expense for

this action.

///

---

[11] In another FLSA action in this district, Egan objected to the defendants' inclusion of
Westlaw charges in their cost bill, in part on the ground that the defendants failed to demonstrate
that the claimed amounts were the "actual amounts that defense counsel paid to Westlaw for the
research performed" and where "receipts for any such payments are conspicuously absent." Pl.'s
Objs. Defs.' Cost Bill at 2, *Llanes v. Zalewski et al.*, No. 3:18-cv-00267-SB, ECF No. 89. So too
here.

### 5.    Scanning

Plaintiffs seek to recover $7,111.50 in scanning expenses. (Egan Decl. at 20, 86.) These expenses were reasonable and necessary because Defendants did not maintain electronic payroll records and thus the parties needed to have "a scanning company come out to Defendants' premises and scan full rooms full of banker's boxes in order to acquire the data from the employees' pay stubs (which was in turn required to determine what dates paychecks were issued, and which employees suffered which damages)." (Pls.' Fee Reply at 9.) Defendants question "what was scanned and why" (Defs.' Fee Resp. at 9), yet agreed to split the initial costs. (Pls.' Fee Reply at 9.) The Court finds that these expenses were reasonable.

### 6.    Pay Stub Data Entry

Defendants object to Plaintiffs' request for $2,225.00 in pay stub data entry expenses on the ground that such expenses are not authorized under "§ 1920 or any other statute." (Defs.' Fee Resp. at 10.) Pay stub data entry expenses were reasonable and necessary under the circumstances discussed above. Thus, Plaintiffs are entitled to recover $2,225.00 in data entry expenses. (*See* Egan Decl. at 19, 45.)

### 7.    Venire Panel Research

Defendants object to Plaintiffs' request for $690.00 in venire panel research expenses on the ground that such expenses are not authorized under "§ 1920 or any other statue." (Defs.' Fee Resp. at 10; *see also* Egan Decl. at 20, 75, reflecting that Egan received a $690.00 "Freeman v. Gladstone Auto" invoice for twenty-three "[j]uror profile reports," which cost $30.00 per profile).

Aside from general descriptions, Egan does not provide additional details about these juror profile reports. Without more and given Egan's experience and expertise in this area, the Court cannot find that $690.00 in juror profile reports was a reasonable and necessary expense.

PAGE 48 – OPINION AND ORDER

Accordingly, Plaintiffs are not entitled to recover the $690.00 in expenses for venire panel research. *See Frechtman v. Olive Exec. Townhomes Homeowners Ass'n*, No. 07-2888, 2008 WL 9888772, at *4 (C.D. Cal. Sept. 3, 2008) (declining to award costs "attributable to jury research").

### 8.    Audio-Video Assistance

Defendants object to Plaintiffs' request for $9,051.00 in trial audio-video assistance expenses, arguing that such expenses are not authorized under "§ 1920 or any other statue." (Defs.' Fee Resp. at 10.) Defendants also reiterate their position that they should not bear many of Plaintiffs' expenses because Defendants prevailed in many respects and did not willfully violate the FLSA. (*Id.*)

From the Court's perspective, audio-video assistance was a reasonable and necessary part of each side's presentations (and therefore expenses) during trial, and as the Court previously explained, Plaintiffs achieved a very good result here. The Court finds that Plaintiffs' $9,051.00 for trial audio-video assistance was a reasonable and necessary cost of this FLSA action, and thus an appropriate nontaxable expense. *Cf. RLIS v. Cerner Corp.*, No. 12-cv-00209, 2015 WL 4040569, at *3-4 (S.D. Tex. July 1, 2015) (awarding taxable costs, not nontaxable expenses, to a party in a non-FLSA action for the "reasonable and necessary costs related to [an] AV technician at trial," and collecting similar cases); *see also Robledo*, 2012 WL 442122, at *3 (awarding expenses not included in the regular hourly rate).

### 9.    Murphy's Trial Preparation and Testimony

Finally, Defendants provide two reasons why they object to Plaintiffs' request to recover $29,373.80 expenses for Murphy's trial preparation and testimony. (Defs.' Fee Resp. at 9-10.) First, Defendants object on the ground that "there is no authority under either the FLSA or the Oregon statutes at issue that would permit Plaintiffs to recover 'expert' fees." (*Id.* at 9.) Second,

PAGE 49 – OPINION AND ORDER

Defendants object on the ground that Murphy, a certified public accountant, was "identified in the pretrial witness list, and called as a summary lay witness, not an expert witness . . . , and therefore entitled to nothing more than the regular witness fee." (*Id.* at 9-10, citing ECF No. 184.)

Plaintiffs respond that Murphy's work was reasonable and necessary because they needed Murphy to "strip and collate [Defendants' payroll] data and calculate the minimum-wage and overtime liquidated damages associated with the hours listed on [Defendants'] 37,000 pay stubs—just like the damages summary witness that Defendants hired and put on at trial." (Pls.' Fee Reply at 9.)

Some courts have awarded "expert" costs in FLSA actions. *See, e.g.*, *Boconvi*, 2018 WL 2248988, at *5 ("Defendants request a one-third reduction on Plaintiffs' expert costs because the Plaintiffs' expert calculated alleged [FLSA] damages . . . . As with the similar request discussed above, the Court again concludes that reducing the number of plaintiffs by one-third does not reduce the total amount of work by one-third. The Court will reduce Plaintiffs' expert costs by ten percent.").

Many courts, however, have held otherwise. *See Krouse v. Ply Gem Pac. Windows Corp.*, No. 3:10-cv-00111-HA, 2012 WL 3241678, at *4 (D. Or. Aug. 7, 2012) ("Because the FLSA does not provide express statutory authority for expert witness fees, plaintiff's request for $2,200.00 must be denied."); *McKinnon v. City of Merced*, No. 1:18-cv-01124, 2020 WL 4813206, at *21 & n.14 (E.D. Cal. Aug. 19, 2020) ("The Court notes that at least where expert fees are challenged by an opposing party when adjudicating the shifting of costs of an action to the non-prevailing party, some courts hold the FLSA does not allow such shifting of expert fees, while also noting the Ninth Circuit has not addressed the issue specifically as to the FLSA."); *see*

*also Gortat v. Capala Bros., Inc.*, 795 F.3d 292, 296 (2d Cir. 2015) ("This [circuit] has not yet addressed whether . . . a district court may award expert fees to a prevailing plaintiff pursuant to 29 U.S.C. § 216(b)[.] . . . [W]e conclude that [§ 216(b) of the FLSA] does not authorize district courts to award costs reimbursing plaintiffs for expert fees. We therefore vacate the district court's award of $10,425 to Plaintiffs' counsel representing costs incurred to retain [an] accounting expert[.]").

Plaintiffs do not cite any FLSA cases in which courts awarded expenses comparable to Murphy's, or dispute that Murphy testified as a summary lay witness. Absent such authority and in light of the contrary authorities above, the Court concludes that Plaintiffs are not entitled to recover the $29,373.80 for Murphy's trial preparation and testimony. *See Bankston v. State of Ill.*, 60 F.3d 1249, 1256 (7th Cir. 1995) (holding that "[t]he district court erred in awarding the total costs ($2,800) plaintiffs expended on hiring an accountant to calculate plaintiffs' damages," noting that the "the accountant testified at the trial, and the court qualified him as an expert witness," and adjusting "the district court's award for costs" given its error in awarding such costs).

### C.    Conclusion

The Court finds that Plaintiffs are entitled to $33,376.39 in nontaxable expenses: $9,051.00 for trial audio-video assistance, $14,437.33 for the collective action notice and website, $2,225.00 for pay stub data entry, $214.45 in court document delivery fees, $124.98 for counsel's mileage to and from court hearings, depositions, and trial, $137.00 in office fees, $75.13 in postage, and $7,111.50 for scanning. (*See* Egan Decl. at 19-20.)

## CONCLUSION

For the reasons stated, the Court GRANTS Plaintiffs' motion for leave (ECF No. 308), and GRANTS IN PART and DENIES IN PART Plaintiffs' motion for attorney's fees and

nontaxable expenses (ECF No. 279) and cost bill (ECF No. 280). The Court awards Plaintiffs $556,853.00 in attorney's and paralegal fees, $13,208.52 in taxable costs, and $33,376.39 in nontaxable expenses.

       **IT IS SO ORDERED.**

       DATED this 12th day of March, 2024.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge